# Reynolds *versus* The Commonwealth.

1. Where a running stream flows over a man's land, and he stocks the stream with fish, he does not thereby make it a private stream within the meaning of the Act of May 5th 1876, which makes fishing in private streams an offence.

2. If the waters of a pond cover a large surface of land, and one whose lands are covered by a part only of the water places fish therein for the purpose of propogation, it does not thereby become a "private pond." To bring it within the Act of 1876, the whole pond must be so far private property as to confine therein the fish with which it is stocked. The owner-ship of a part only of the land covered by the water is not sufficient to give to the whole water the distinctive character of private. The pond must be treated as an entirety. Either the whole or none is private.

March 8th 1880. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ. GREEN, J., absent.

Error to the Court of Quarter Sessions, of *Luzerne county :* Of January Term 1878, No. 274.

Indictment of Daniel Reynolds for violating the game laws.

The defendant was indicted under section 20, of the Act of Assembly to amend and consolidate the several acts relating to game and game fish, approved May 5th 1876; the section being as follows, to wit :

" Any person trespassing on any lands for the purpose of taking fish from any private pond, stream or spring, after public notice on the part of the owner or occupant thereof, such notice being posted adjacent to such pond, stream or spring, shall be deemed guilty of trespass, and · in addition to damages recoverable by law, shall be liable to the owner, lessee or occupant in a penalty of $100 for every such offence; provided, however, this section shall apply only to such ponds, streams or springs as shall be used or im-proved by the owners or lessees for the propagation of fish or game fish."

By a subsequent section, a defendant, upon conviction, is liable to imprisonment for a period of not less than one day for each dollar of penalty.

Finn's pond is a large pond in the upper part of Luzerne county, covering about one hundred and twenty acres of ground. It was formerly the property of William Finn, who also owned the land surrounding it. He sold off parts of the land adjoining the pond, so that there came to be different shore owners about the pond. For a period of between thirty and forty years, the various shore owners claimed and exercised the right to fish in the pond, to boat on it, to drive saw logs and lumber on it, to use it generally as their common property.

In 1849, William Baylor, the prosecutor in this action, became the shore owner of "Lot No. 22," at the lower end of the pond, where there was a saw-mill. Twenty years afterwards, in 1869,

[Reynolds v. Commonwealth.]

he obtained a quit claim deed to the pond. He stocked the pond in the spring of 1876, with white-fish, California salmon and suckers. He also placed printed notices about the pond, stating that he was the owner, and forbidding fishing therein. On the 20th of January 1877, defendant cut holes in the ice on the pond and was found fishing, having caught two pickerel when he was arrested.

The following were among the points of defendant :

1. That penal statutes must be construed strictly, and, therefore, it is necessary for the Commonwealth to prove that the pond in question is the private pond of William Baylor, the prosecutor, and also, that it was used or improved by him for the propagation of fish, or game fish, and that he gave previous public notice that it was such a pond, kept for such a purpose ; and if the jury find that the Commonwealth has failed in any particular of this proof, they must find for the defendant.

Ans. " This point we affirm, but instruct you that the prosecutor need not show title to the whole of the land covered by the water of this pond; to sustain this prosecution, he need only show title to the land covered by the water of this pond where the defendant was found fishing at the time ; in other words, over lot No. 22."

2. If the jury find that this pond was openly, notoriously and continuously used by the various shore owners, as their common property, for a period of twenty-one years previous to the setting up of an exclusive claim by the prosecutor, then the pond is not his private pond.

Ans. " This point we affirm, but instruct you that the pond in question, is a private pond, so far as the public are concerned ; in other words, to all the people of this Commonwealth, except the shore owners, this is a private pond within the meaning of the law."

5. That the Commonwealth has failed to show a properly connected paper title to the pond in question in the prosecutor.

Ans. " This point we affirm, but instruct you that the prosecutor has shown sufficient title to lot No. 22, upon which, it is alleged, this defendant trespassed, to sustain this action, provided you believe the evidence of the Commonwealth."

In the general charge, the court, Handley, A. L. J., inter alia, said :

" It is sufficient when I say to you that the Commonwealth has shown proper title to lot No. 22, where, it is alleged, this defendant fished. Hence, if you find from the evidence, that the defendant, Mr. Reynolds, did enter upon the lands of Baylor covered by the water of this pond, and took fish therefrom, as charged in the indictment, then you may return a verdict of guilty in manner and form as he stands indicted."

[Reynolds *v.* Commonwealth.]

The verdict was "guilty." After sentence defendant took this writ, and alleged that the court erred in the answers to his points, and in the above portion of the charge.

*A. Ricketts*, for plaintiff in error.—The Act of May 5th 1876, Pamph. L. 104, is highly penal, and must be construed strictly. The court, apparently not discriminating between a simple action of trespass and a prosecution under this penal statute, ruled that, although title to the pond was not shown in the prosecutor, yet title to lot No. 22 was shown, and that was sufficient to maintain the prosecution. According to the ruling of the court, if a man goes upon this pond, and happens to get on that part of it which is within the lines bounding lot No. 22, and there takes a fish, he is liable to a prosecution under this act.

Again, the evidence was clear that the various shore-owners had, for more than twenty-one years previous to the prosecutor's claim, exercised acts of ownership over the pond of such a character as to vest in them such title as would prevent any one of them acquiring a peculiar title to the pond without the consent of the others : Carter *v.* Tinicum Fishing Co., 27 P. F. Smith 310, and cases cited.

*Charles E. Rice*, District Attorney, *George R. Bedford*, and *Henry W. Palmer*, for the Commonwealth.—A wrongdoer cannot show title in "a stranger :" Stambaugh *v.* Hollabaugh, 10 S. & R. 357 ; 2 Rawle 14. Had there been no evidence of title in the prosecutor to the rest of the pond, the question here, and before the court below, would have been different. But as there was ample evidence of it, as already stated, it became simply a question of fact was there trespassing on lot No. 22, the title to which was not disputed.

The defendant was not a shore-owner, nor was he fishing by permission of any shore-owner; he was a mere trespasser, and therefore, so far as his offence was concerned, it makes no difference whether the pond had one owner or eight. It was none the less a private pond. The term private is defined as "affecting or belonging to individuals, as distinct from the public generally :" Bouvier. It must be held to distinguish the ponds and streams intended to be protected from public ponds and streams, as navigable rivers, or ponds declared to be public highways by the sovereign power.

Mr. Justice MERCUR delivered the opinion of the court, May 3d 1880.

This was an indictment under the 20th section of the Act of 5th May 1876, Pamph. L. 104, brought into the Quarter Sessions under the 27th section of the act.

[Reynolds *v.* Commonwealth.]

The 20th section declares "any person trespassing on any lands for the purpose of taking fish from any private pond, stream or spring, after public notice on the part of the owner or occupant thereof, such notice being posted adjacent to such pond, stream or spring, shall be deemed guilty of trespass, and in addition to damages recoverable by law, shall be liable to the owner, lessee or occupant, in a penalty of one hundred dollars for every such offence: Provided, however, this section shall apply only to such ponds, streams or springs as shall be used or improved by the owners or lessees for the propagation of fish or game fish." The 27th section declares " that any person violating any of the provisions of this act, and who shall be summarily convicted thereof before a justice of the peace or alderman, shall be sentenced to pay the fine or penalty attached to such violation, with costs, one-half of the penalty to go to the informer, and the other half to be paid to the county treasurer, and by him distributed to the various school districts of the county. Providing, however, that the defendant may, on refusing to pay his penalty, and on entering into recognisance with securities to answer the complaint, on a charge of misdemeanor before the Court of Quarter Sessions of the county, transfer the case to said court, which shall then proceed with the trial thereof." It is thus shown that the plaintiff in error, by his own election, brought the case into the Quarter Sessions.

Recurring then to the statute, in order to constitute the offence, not only must a trespass be committed on the land, but it must be with the purpose of taking fish from a " private pond, stream or spring." The important question then is, in what manner must the water be owned and occupied to give it the private character contemplated by the act? The three bodies of water to which " the purpose" must apply, are stated disjunctively. Whatever else be its character or condition, whether it be stream, spring or pond, the body of water must be " private." In case a running stream flows over a man's land, and he stocks the stream with fish, he does not thereby make it a private stream within the meaning of this act. The manifest intention is to protect to the owner those fish which were private property, and without the action of the trespasser would have remained such property. The title of a riparian owner of land extends to the middle of a stream, not a public highway. In case the lands of opposite riparian owners thus join, and one of them stocks the stream with fish, he does not thereby make it a " private stream."

So if the waters of a pond cover a large surface of land, and one whose lands are covered by a part only of the water, places fish therein for the purpose of propagation, it does not thereby become a " private pond." The question is not whether he has rights which may be trespassed on, but is the whole body of water private within the meaning of the statute? We think it is

[Reynolds *v.* Commonwealth.]

not. To bring the case within the statute, the whole pond, stream or spring must be so far private property as to confine therein the fish with which it is stocked. The ownership of a part only of the land covered by the water is not sufficient to give to the whole water the distinctive character of private. It is not both public and private. The pond must be treated in its entirety. Either the whole or none is private. The owner of a part cannot make it private without an actual and visible separation from the other parts. Without such separation, the owner of a part cannot change its character against the wishes of persons owning the other parts thereof. The first, second, third and fifth assignments are sustained. We see no error in the fourth and sixth.

                                        Judgment reversed.