## Benscoter *v.* Long, Appellant.

[Marked to be reported.]

*Trespass—Fishing—Private pond—Act of June 3, 1878.*

If the waters of a pond cover a large surface of land, and a person whose lands are covered by a part only of the water places fish therein for the purpose of propagation, the pond does not thereby become a private pond, within the meaning of the act of June 3, 1878, P. L. 160.

In an action to recover the penalty provided by the act of June 3, 1878, P. L. 160, it is improper to charge : " If you find as a matter of fact from the evidence that defendant owned any substantial part of the land covered

by this pond—and I mean by substantial, two, or three, or four, or five or six rods, as indicated by some of the maps—then it is not a private pond."

*Notice under act of June 3, 1878.*

A notice that " all persons are hereby notified not to trespass on these lands or fish in this pond under penalty of the law," is not a sufficient notice under the act of June 3, 1878, P. L. 160, either to strangers or to neighbors.

*Use of pond for propagation of fish.*

The mere placing of fish in a pond, without any " improvement " whatever " for the propagation of fish or of game fish," is insufficient to place the pond within the protection of the act of June 3, 1878, P. L. 160.

*Title by possession of land under water—Deed—Exemplification of will— Act of May 22, 1878.*

Plaintiff brought an action to recover the penalty under the act of June 3, 1878, P. L. 160, for fishing in a private pond, and to show title to the pond gave in evidence an assignee's deed and possession of the land adjoining the pond for more than twenty-one years, but did not give in evidence the deed from the assignor to the assignee. He also gave in evidence, as authority for an executor's deed in evidence in plaintiff's chain of title, an exemplification of a foreign will, recorded in the register's office at the time of the trial under the act of May 22, 1878, P. L. 98. *Held*, that the evidence of ownership or possession was not sufficient to support the action.

Argued April 11, 1893. Appeal, No. 13, Jan. T., 1893, by defendant, Clinton H. Long, from judgment of C. P. Luzerne Co., Oct. T., 1889, No. 870, on verdict for plaintiff, John Benscoter. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM and DEAN, JJ.

Trespass for penalty for illegal fishing.

At the trial, before LYNCH, J., it appeared that defendant at various times fished in a pond which plaintiff claimed was a private pond, protected by the act of June 3, 1878, P. L. 160. It appeared that plaintiff had placed bass in the pond, but there was no evidence that he had improved the pond for the purpose of propagating fish. He had placed near the pond the following notice : " All persons are hereby notified not to trespass on these lands or fish in this pond under penalty of the law."

[Plaintiff offered in evidence, contract, Archibald McCall, assignee of Moore Whorten, to Isaac Benscoter, 2d, dated

VOL. CLVII—14

Feb. 20, 1836, recorded May 5, 1863, for a tract of land situate in Union township, Luzerne county, and containing about 441 acres, be the same more or less, which was surveyed in pursuance of a warrant in the name of John Watson ; and the said Isaac Benscoter agrees to purchase the said land from the said Archibald McCall, and pay him for the same the sum of $300 in manner following : etc. Then follows deed from Archibald McCall, assignee of Moore Whorten, to Isaac Benscoter, dated Dec. 19, 1862, recorded May 5, 1863, for the whole Watson tract.

Defendant objected to the contract and deed as incompetent; and also there being no showing of title in Archibald McCall.

Plaintiff's counsel : We offer this for the purpose of showing a link in the chain of title to the pond in question in the plaintiff ; we propose to show that the title is in John Benscoter for all this pond.

Defendant's counsel : Do you propose to show any conveyance from Moore Whorten to Archibald McCall ?

Plaintiff's counsel : Only what is recited in this deed; it has been lost and as I am informed unable to be found ; we propose to show in connection with this our possession for thirty or forty years.

By the Court : For the present we will admit it, for two reasons ; first, the age of the paper, and second, the recital contained in the paper; exception noted for defendant, and bill sealed.] [1]

Plaintiff then gave in evidence the other deeds, tracing title to himself, with the exception of the deed to the assignee mentioned above.

[Plaintiff then offered in evidence exemplification of the will of Benj. R. Morgan, Gloucester county, New Jersey, under the hand and seal of the probate court of that county, together with the proper certificates attached ; exemplified under the act of Congress,—willing to his executors Louis Walm, Coleman Fisher and William Rawl this land, and giving them power to sell. Deed, Louis Walm, Coleman Fisher and William Rawl, executors of the last will and testament of Benjamin R. Morgan, to William Search, George Search, Lot Search, Ellen Kremer, Christiana Search, Elizabeth Search and Thomas J. Search, all of the township of Union, county of Luzerne, state

of Pennsylvania, dated July 10, 1849, lot of land partly in Union and partly in Ross, describing this same tract 260 acres 76 perches and allowance, being a part of the larger tract of land surveyed on the 10th of January, 1793, by the commonwealth of Pennsylvania to Benjamin R. Morgan; the deed recites will, and it speaks of William Rawl as being then called and known by the name of William Rawl, Jr., consideration, $675. Recorded Jan. 13, 1851.

Defendant objected to the admission of this deed last offered, because it contains no internal evidence that it covers the land involved in this lawsuit; (2) the will under which it purports to have been executed contains no authority to the executors to make deeds; and (3) the purported will of Benjamin R. Morgan, so far as shown, has never been recorded in Luzerne county or in the state of Pennsylvania, nor have letters been issued by the proper authority in Pennsylvania, therefore the executors have no authority to make deed of lands lying within the state.

Plaintiff proposed to show, in addition to the paper title offered, that the present possessor and his father under whom he claims have been in possession of this land between 30 and 40 years undisputed under and by virtue of the title; it therefore does not lie in the mouth of a trespasser to dispute this title; and we propose to show location,—that it is a part and upon that part that this trespass occurred.

By the Court: The court sustains the third objection; exception noted for the plaintiff; bill sealed.

Plaintiff offered in evidence exemplification of the will of Benjamin R. Morgan, deceased, now filed in the register's office of Luzerne county, Feb. 11, 1892, recorded in will book M., page 185,—the same exemplification that was offered this morning. Together with the exemplification and all papers thereto attached, recorded in the office of the register of wills in and for Luzerne county, in will book M., page 185, Feb. 11, 1892.

Defendant objected to the offer, that it is inadmissible for the purpose of showing title in the present action, and as to the defendant here, there was no paper title in the plaintiff at the time of the alleged trespass,—the record of the exemplification of the will during the trial of the case does not relate back to a time prior to the alleged trespass.

212 BENSCOTER v. LONG, Appellant.

The Court: The objection is sustained. It seems this is offered for the purpose of proving a paper title to the land in dispute and possession in the plaintiff. As the court understood before dinner, the plaintiff intended to rely upon an open and notorious possession of the land, and hence the court is of the opinion that this act does not authorize the admission of paper such as is offered at this late date for the purpose of affecting the alleged trespass committed at the beginning, or on or before the beginning of this suit. Exception noted for the plaintiff and bill sealed.

Plaintiff re-offered the same record on the next day; exemplification of the will of Benjamin R. Morgan, recorded in will book M., page 150, recorded Feb. 11, 1892, to be followed with the other deeds already offered in evidence by the plaintiff, showing a continuous title from the commonwealth to John Benscoter of the portion of the South Pond now occupied by him,—the same deeds that have been put in evidence; they were then put in evidence to show color of title.

Objected to for the same reasons as before.

The Court: Objection is sustained for the same reasons.

On Feb. 15, 1892, plaintiff's counsel proposed: At the time when the certified copy of the will was last offered, together with the record thereof,—will of Benjamin R. Morgan, will book M., page 150,—it had already been probated by the register under the provisions of the act of 1832, a fact that we did not call to the attention of the court, and for that reason I now make a re-offer of that will, to be followed with the deeds that were formerly offered. I offer it for the purpose of showing a title in fee in John Benscoter.

Defendant objected to the offer as containing no new essential element of the offer previously made in this behalf; that the alleged conveyance from the executors of Benjamin R. Morgan under his will was never legal and never could have been legalized except under the curative act of assembly on that subject; that no curative act legalizes such a conveyance prior to the time when it is actually perfected under the act, particularly for the purpose of a pending suit and during the trial thereof.

By the Court: The court is of opinion that this evidence, taken together with such possession as has been shown by Mr. Benscoter, and the remainder of the paper title, is sufficient in

law to warrant a presumption of a valid title having passed from the Morgan estate to the plaintiff. Objection overruled, evidence admitted, and bill sealed for defendant.] [2]

Defendant disputed plaintiff's claim to title to the whole pond, and alleged and gave evidence that a portion of the pond was on his own land.

The court charged as follows:

" This case is an action of trespass, brought by Mr. Benscoter, the plaintiff, against Clinton Long, the defendant. The essential part, or ingredient, of this action is an injury done to the possession of the plaintiff's land, or land that is in his possession. The action is based upon the 21st section of the act of June 3, 1878, which provides as follows: ' Any person trespassing on any lands for the purpose of taking fish from any private pond, stream or spring, after public notice on the part of the owner or occupant thereof, such notice being posted adjacent to such pond, stream or spring, shall be deemed guilty of trespass, and, in addition to the damages recoverable by law, shall be liable to the owner, lessee or occupant in a penalty of one hundred dollars for any such offence. Provided, however, this section shall apply only to such ponds, streams or springs as shall be used or improved by the owners or lessees for the propagation of fish or game fish.' Permit me briefly to call your attention to some of the facts and to eliminate from the case matter which the court thinks is not essential in order to arrive at a proper verdict.

" All the land in the neighborhood of this pond, in so far as it is essential for the purposes of this case, is shown to have at one time belonged to the commonwealth of Pennsylvania. On the tenth day of January, 1779, a warrant was secured, and upon that a survey was made, upon the fourteenth of October, 1793, to Benjamin R. Morgan, for 440 acres, 9 perches and allowance, situate at the head branches of Hunlock's Creek and Shickshinny, and including South Pond, so called. By that patent the title to that tract passed from the commonwealth to Benjamin R. Morgan. The same proceedings were had so far as the John Watson tract is concerned. The warrant is dated April 10, 1793; it was surveyed on April 2, 1794, for 440 acres and allowance; situated on the South Pond on Hunlock's Creek. By virtue of that patent the Watson tract was con-

veyed to John Watson. [By a line of conveyances which it is unnecessary to burden the jury with in this action, the title and possession to a portion of these tracts—secured by Morgan to the Morgan tract, and by Watson to the Watson tract— vested in John Benscoter. So that on the 5th day of September, 1889, John Benscoter had both paper title and title by possession to that part of the Watson and that part of the Morgan now in question, extending north to the Hazlehurst line.] [3] On the 19th of July, 1792, a warrant was issued by the commonwealth to Samuel Hazlehurst, and upon that warrant a survey was made on the 29th September, 1792. By a line of conveyances the title of the Samuel Hazlehurst in question vested and was in Clinton Long, on the 5th of September, 1889. [This not being an action of ejectment, you may assume, for the purpose of arriving at a true verdict in this case, that on the 5th of September, 1889, John Benscoter owned that part of the Morgan and Watson covered by the pond south of the Hazlehurst line, and that the property was then in his possession, so that a trespass upon it makes the trespasser liable in damages.] [4]    Clinton Long owned and was in possession of the Hazlehurst, which joins the north line of the Morgan at the point in dispute, on the 5th of September, 1889. In 1843 or 1844, you will recall the year, the predecessor in the title which is held by Mr. Benscoter built a milldam on the outlet of this pond, a short distance below the pond, for the purpose of holding the water in order that a mill near by might be properly run. That dam was not erected for the purpose of making the South Pond a private pond, nor for the purpose of propagating fish in the South Pond, but for milling purposes, and it is conceded on both sides that the height of the dam has not since been changed or altered. You will have before you the original surveys of the Morgan, the Watson and the Hazlehurst tracts.

" One of the principal questions in this case is, the location of the Hazlehurst line. The plaintiff contends, and the court is of the opinion that it is necessary, that he shall establish that fact by proper credible evidence, to the satisfaction of the jury, that the Hazlehurst line is not in nor across the north end of this pond, but that it is either on the shore above the ordinary level of the water or still further north. The defendant's contention on that point is, that the Hazlehurst line is in the pond

and cuts across the upper end of it, some places one rod, and at other places, two, three, four, five, six, seven, and I believe as high as eight or nine rods.

" You have heard the evidence of the plaintiff, and especially that of Mr. Crocket, an engineer or surveyor ; you will remember what he said concerning surveys made by him, and the map made by him based upon that survey.   Does that map show that the Hazlehurst line is in or across any material part of the water of this pond?   Then you may go next to the survey and map of the defendant's witness, Mr. Trescott.   Where does that surveyor and his map show the Hazlehurst line is ?   Examine the original map or surveys, namely, the surveys of the Watson, Hazlehurst and Morgan.   It is proper for the court to call your attention to the fact that there is no direct evidence as to how high the dam built by the Benscoters did raise the water in this pond.   You will ascertain, from the credible evidence in this case, whether the dam built by Benscoter at the outlet in 1843 or 1844 did raise the water so as to throw it upon the Long land, and thereby change the actual height of the pond from what it was when the original survey was made, in 1793.   If the dam raised the water and thereby backed it upon Mr. Long, and held it there for twenty-one years continuously, Mr. Benscoter would undoubtedly have what is called an easement in that part of Long's land, that is, a right to enter upon his land by the water of the pond, but plaintiff would not thereby become the owner of the land under it.   He would have a right to keep the water at that height for the purpose of supplying the mill, and Mr. Long could not compel him to lower it, but by keeping it there for twenty or any other number of years, Mr. Benscoter would not thereby become the owner of the land under the water.   Was the water in 1793, and about that time, at its ordinary height upon the Hazlehurst?   If not, was it put upon the Hazlehurst by the dam built by the Benscoters in 1843 or 1844, and has it been kept there since that time ?

" [If you find as a matter of fact, from the credible evidence in the case, that Clinton Long owned any substantial part of the land covered by this pond—and I mean by substantial, two, or three, or four or five or six rods as indicated by some of the maps—then it is not a private pond.   The Supreme Court has

held, under the section of the act of 1876, of which this section is a transcript, that in order to constitute a private pond, the plaintiff (in that case the prosecutor) must be the owner of the whole of the pond, otherwise it is not private.] [10]

" This action, although stated in the different forms in the declaration, is based upon the act of 1878. If, therefore, you find as a matter of fact that the Hazlehurst line crosses any substantial part of this pond, this action cannot be maintained, and the verdict should be for the defendant. Suppose however you concluded that the Hazlehurst line is on the shore at or above the ordinary height of the water, then, you may find that the pond is private; but you will first inquire whether the pond was used or improved by the owner for the propagation of fish. What evidence is there that it was so improved? What improvements for the propagation of fish were put upon this pond by Mr. Benscoter? Propagation of fish means the increase and spread, by artificial and natural means, by the spawn and by the placing of fish in the pond. Is there any evidence in the case that Mr. Benscoter did anything to improve the pond for that purpose? The court does not remember any evidence of that kind. You will then inquire, also, whether it was used by Mr. Benscoter for the propagation of fish? On that branch of the case what was done? Mr. Benscoter testified that several years ago he purchased and stocked this pond with 115 black bass and other sorts of fish, so that it would seem to a certain extent that he stocked the water. The evidence is that the fish did propagate and that there were black bass and other fish in the pond on the 5th of September, 1889, and for a short time before that. [The stocking of this pond by Mr. Benscoter, and the care which he says he exercised over it afterwards, is perhaps sufficient to warrant the jury in finding that it was used by him for the propagation of fish.] [12]

[It is also necessary that Mr. Benscoter prove that he gave public notice as required by the act, and that such notice was posted adjacent to the pond. If Mr. Long were a stranger, and had no knowledge of the claim of the ownership of this pond, the notice here offered would not be sufficient to entitle the plaintiff to recover under this section of the act. Mr. Long did know and recognized the fact that Mr. Benscoter at least claimed to be the owner and claimed to be in possession of this

property, below the Hazlehurst line.  This notice, therefore, is sufficient warning under the act] [13] to Mr. Long.  You will have the map which it is claimed was made by Mr. Sturdevant in 1860, and, also, the map made by Mr. Leuffer in 1843 or 1844.

" You will observe that one of the main questions for the jury to decide is the location of the Hazlehurst line.  If it does not cross the water of this pond at its ordinary height, then you may find that the whole of the pond was in the possession of Mr. Benscoter.  If you shall find that the Hazlehurst line does cross and cover a material or substantial part of the water, the pond is not private under this section, and Mr. Benscoter cannot recover in this action.  If you shall find that Mr. Long is simply a shore owner, that is, if the Hazlehurst line is along the shore, and not in the water, he had not the right to fish where he testifies he did.  He must be an owner of part of the land covered by the water in order to defeat Mr. Benscoter's action in this case."

Plaintiff's points were among others as follows :

" 2.  If the jury believe the evidence of plaintiff and of Abram Benscoter, the plaintiff, John Benscoter, is the owner, lessee and occupier, of South Pond within the meaning of the statute of 1878, providing a penalty for trespassing upon the lands of another for the purpose of fishing.  *Answer :* I do not recall exactly what Mr. John Benscoter swore to.  Assuming that he testified that he was the owner of the whole of the pond, if you find that to be the case, and that he did so testify, then his point is affirmed." [7]

Defendant's points were among others as follows :

" 4.  Under the undisputed evidence in this case a portion of the pond in question is upon the Samuel Hazlehurst tract, and the plaintiff has shown no ownership, occupancy or lease in him of a private pond within the meaning of the statute, and the verdict must be for the defendant.  *Answer :* I decline to affirm that point.  It is a question for the jury to ascertain where that line is." [8]

" 5.  The plaintiff has shown no legal or equitable paper title either in himself as owner, or in any person from whom he claims, to any part of the pond in question at the time of the alleged trespass, and there is no sufficient evidence of such title

by possession to enable him to maintain this action, and the verdict must be for the defendant. *Answer:* I decline to affirm that point. The substance of the point is, that the plaintiff has not shown a legal title to any part of the pond. The plaintiff has shown, for the purpose of this case, title to the Hazlehurst line." [5]

" 6. The plaintiff has shown no legal or equitable paper title either in himself as owner, or in any person from whom he claims as lessee or occupant, to the Benjamin R. Morgan tract, or to that part of the pond in question, situate upon said tract where the trespass is alleged to have been committed, and there is no sufficient evidence of title in the plaintiff by possession to enable him to maintain this action, and the verdict must be for the defendant. *Answer:* That point I decline to affirm. I think Mr. Benscoter has shown title and possession up to the Hazlehurst line, sufficient for the purposes of this case." [6]

" 7. There is no evidence that at and prior to the time of the alleged trespass either the plaintiff or any one acting for him had posted, adjacent to the pond, a public notice that such pond was a ' private pond used or improved for the propagation of fish or game fish,' as required by the statute, and the verdict should be for the defendant. *Answer:* That point I decline to affirm. While the notice offered here might possibly be defective as to strangers, with the knowledge shown in this case that Mr. Long had of the claim of ownership and possession of Mr. Benscoter there, it is sufficient." [14]

" 8. If the jury find that a portion of the pond in question is upon the Samuel Hazlehurst tract, their verdict must be for the defendant. *Answer:* If that point simply mean a foot or two in width, the point is not well taken, but if it mean several yards or any substantial part of the water, the point is affirmed." [9]

" 9. If the jury find that there has always been a natural stream of water flowing over lands not owned, leased or occupied by the plaintiff, and in the northerly part of the pond in question, and that, unobstructed by any natural or artificial means, the fish and game fish have been able to pass from the pond into the stream and from the stream into the pond, then there has been no such use or improvement of the pond in ques-

tion as is necessary to bring this case within the statute, and the verdict must be for the defendant." Refused. [11]

"12. A prescriptive right to enter upon the lands of another and fish in his waters, in common with that other, may be acquired from continued uninterrupted adverse use by the owner of the adjoining land, and those who formerly owned such land for the period of at least twenty-one years. *Answer :* I decline to affirm that point. As an abstract question of law it is not questioned, but the evidence in this case offered on the part of the defence does not warrant the court in submitting the question to the jury." [15]

"13. If the jury find that Joseph B. Long, the defendant's father, lived upon the land acquired by him as already stated, from the time of its acquisition to his death, in 1874; that since his death the defendant has owned and continuously occupied the same property ; that the father during the period of his occupancy and the defendant since 1864, respectively and as incident to their respective ownerships of these adjacent lands, continuously and uninterruptedly asserted a right to enter upon the pond in question and catch fish and did so continuously and uninterruptedly enter thereon and fish ; that the assertion and exercise of this claim of right was continuously known to the plaintiff during his ownership of the pond and to those who may have preceded him in such ownership meantime, and that neither he nor his predecessors granted permission to defendant or his father to fish, on the one hand, nor attempted to interfere in that behalf until the year 1888, then the defendant, on the occasion of his fishing in September, 1889, has a perfect legal right so to do, and was not a trespasser and the verdict should be in his favor. *Answer :* That point I decline to affirm. Under the evidence in this case, the point does not apply ; repeated acts of trespass upon the part of the defendant did not ripen into a prescriptive right." [16]

Verdict and judgment for plaintiff for $100. Defendant appealed.

*Errors assigned* were (1, 2) admissions of evidence ; (3–16) instructions ; quoting bills of exception and instructions as above.

*W. H. McCartney, L. H. Bennett* with him, for appellant.— The evidence was not sufficient to show that the pond was a private pond within the meaning of the act: Act of June 3, 1878, P. L. 160 ; act of May 4, 1876, P. L. 102.

The evidence of title was insufficient : Olewine v. Messmore, 128 Pa. 480 ; Garwood v. Dennis, 4 Bin. 314 ; act of May 22, 1878, P. L. 98.

Those portions of the Morgan and Watson tracts covered by this pond have, under the evidence, been actually occupied no more by plaintiff than by dozens of his neighbors. What he has done even on the borders of this pond, is not shown by any evidence, if we except that of the construction and maintenance of the dam at its outlet or southern end, but this would not give him title by possession to the bed of the pond: Mfg. Co. v. Strafford, 51 N. H. 455 ; Corning & Horner v. Nail Factory, 34 Barb. 529.

If the court, as matter of law, can say that a pond is a private one under the act of assembly, notwithstanding the alleged private owner does not own a strip one and nine tenths rods wide across the whole end,—then with equal propriety it may be ruled, as a question of law, that the alleged private ownership may exist in the absence of a strip, five or ten or twenty-five rods wide, and so on indefinitely until it becomes a question only which of two different parties, each claiming sole ownership of a pond, has the larger portion.

The " use " of this pond " for the propagation of fish or game fish," consists solely, under the evidence, of the plaintiff having at one time put in some black bass, at another some trout that had never been heard of since, and at another some white chubs. Appellant did equally as much in that direction. Nor was there any " improvement " whatever " for the propagation of fish or game fish."

The notice was insufficient. There was no claim that the pond was private or that it had been used or improved for the propagation of fish.

*Q. A. Gates,* for appellee.—Title was sufficiently shown in Benscoter : Olewine v. Messmore, 128 Pa. 480 ; James v. Letzler, 8 W. & S. 192 ; Warner v. Henby, 48 Pa. 187 ; Townsend v. Kerns, 2 Watts, 180.

The court left it to the jury to say whether any material part of this pond was on the Hazlehurst warrant, and the jury found that there was no material part of the pond upon that tract. Had the appellant printed the maps showing this location that were offered in evidence, as they could have done, the correctness of this ruling would be seen at a glance.

This was not the case of Reynolds v. Com., 93 Pa. 458. In that case there was no dispute regarding the facts. It was an admitted or well proven fact in that case that the prosecutor did not own a large portion of the pond in dispute.

The evidence regarding the public notice was all the statute required.

Appellant had no prescriptive right to fish as indicated in the 16th assignment of error: Cobb v. Davenport, 32 N. J. L. 369; Hughes v. Stevens, 36 Pa. 320; Wheeler v. Winn, 53 Pa. 122; Tinicum Fishing Co. v. Carter, 61 Pa. 21; Bennett v. Biddle, 140 Pa. 396; Baylor v. Decker, 133 Pa. 168.

OPINION BY MR. CHIEF JUSTICE STERRETT, Oct. 2, 1893:

This action of trespass, to recover penalty, etc., is based on section 21 of the act of June 3, 1878, P. L. 160, which reads thus: "Any person trespassing on any lands, for the purpose of taking fish from any private pond, stream or spring, after public notice on the part of the owner or occupant thereof, such notice being posted adjacent to such pond, stream or spring, shall be deemed guilty of trespass, and in addition to damages recoverable by law, shall be liable to the owner, lessee or occupant in a penalty of one hundred dollars for every such offence. Provided, however, this section shall apply only to such ponds, streams or springs as shall be used or improved by the owners or lessees for the propagation of fish or game fish."

This section is penal and must of course be strictly construed. It is identical with section 20 of the act of 1876, construed by this court in Reynolds v. Com., 93 Pa. 458. It was there held: (1) "Where a running stream flows over a man's land, and he stocks the stream with fish, he does not thereby make it a private stream within the meaning of the act of May 4, 1876, which makes fishing in private streams an offence." (2) "If the waters of a pond cover a large surface of land, and one, whose lands are covered by a part only of the water, places

fish therein for the purpose of propagation, it does not thereby become a 'private pond.' To bring it within the act of 1876 the whole pond must be so far private property as to confine therein the fish with which it is stocked. The ownership of a part only of the land covered by the water is not sufficient to give to the whole water the distinctive character of private. The pond must be treated as an entirety. Either the whole or none is private."

It will be observed that the right of action is given to "the owner, lessee or occupant" of the land, embracing such "private pond, stream or spring," only after public notice posted, by the "owner or occupant," adjacent to such pond, stream or spring; and, by the proviso, the right of action is restricted "to such ponds, streams or springs as shall be used or improved by the owners or lessees for the propagation of fish or game fish."

Testimony was introduced by plaintiff for the purpose of showing title in himself to the land on which the pond in question is located, etc. Instructions, as to the insufficiency of the evidence for that purpose, were asked by defendant in his fifth and sixth points, both of which were refused. For further answer to the former, the learned judge said: " The plaintiff has shown, for the purpose of this case, title to the Hazlehurst line ; " and, for further answer to the latter, he said : " I think Mr. Benscoter has shown title and possession, up to the Hazlehurst line, sufficient for the purposes of this case." Again, in that part of his charge recited in the fourth specification, he said : " This not being an action of ejectment, you may assume, for the purpose of arriving at a true verdict in this case, that, on the 5th of September, 1889, John Benscoter owned that part of the Morgan and Watson covered by the pond south of the Hazlehurst line, and that the property was then in his possession, so that a trespass upon it makes the trespasser liable in damages." From these and other instructions of like import the jury would doubtless understand that sufficient proof, either of ownership or possession, or of both, had been given to entitle plaintiff to maintain an action for the penalty against defendant or any one who was shown to have trespassed on the premises south of the Hazlehurst line. In view of the evidence we think these instructions were inadequate and misleading.

But assuming, merely for the purpose of argument, that plaintiff's proof of title and possession in pursuance thereof was such as to justify the learned judge in directing the jury to assume, as an established fact, plaintiff's ownership and possession of those parts of the Morgan and Watson tracts " covered by the pond south of the Hazlehurst line," etc., it does not follow that he owned or was in possession of the whole pond. There was testimony tending to prove that part of the pond in question was north of said line, on land owned by defendant; and his eighth point, for charge, based on that evidence, is as follows : " If the jury find that a portion of the pond in question is upon the Samuel Hazlehurst tract, their verdict must be for defendant." The answer of the court was : " If that point simply mean a foot or two in width, the point is not well taken, but if it mean several yards, or any substantial part of the water, the point is affirmed." What the learned judge meant by " substantial part," is further shown by the following sentence, from his charge, recited in the tenth specification : " If you find as a matter of fact from the credible evidence in the case that Clinton Long owned any substantial part of the land covered by this pond,—and I mean by substantial, two, or three, or four, or five or six rods, as indicated by some of the maps,—then it is not a private pond."

It requires no argument to show that the answer to defendant's eighth point, in connection with this quotation from the charge, is not only erroneous and misleading, but clearly in conflict with our ruling in Reynolds v. Commonwealth, supra. We cannot assume that this error was cured by the learned judge's reference, in same connection, to that decision, or by his unqualified affirmance of defendant's first, second and third points, wherein the principles applicable to the case are correctly stated.

Time will not permit special reference to the testimony relied on by plaintiff to sustain the rulings complained of in the eleventh to fourteenth specifications inclusive, nor do we think it necessary. We have examined the testimony and considered its bearing on the questions involved in said specifications, and are of the opinion that it is insufficient to warrant the jury in finding such use or improvement of the pond in question, and such compliance with the law, as to notice, etc., as are necessary to bring the case within the act of 1878.

As to the improvement and use of the pond, by plaintiff, " for the propagation of fish or game fish," the evidence practically amounts to nothing. Referring to plaintiff's testimony in relation to stocking the pond, etc., the learned judge said : " The care which he says he exercised over it afterwards is perhaps sufficient to warrant the jury in finding that it was used by him for the propagation of fish." We do not so understand the testimony, nor do we think it justifies any such inference. Again, in speaking of the public notice required by the act, he concedes that if defendant " were a stranger and had no knowledge of the claim of ownership of this pond, the notice here offered would not be sufficient to entitle the plaintiff to recover under this section of the act ; " but he held that defendant's knowledge that plaintiff claimed to own and be in possession of the property was " sufficient warning under the act." We cannot assent to this as a proper construction of the act. It prescribes the kind of public notice that shall be given, not only to strangers but also to neighbors, and unless its terms are satisfied no right of action for the penalty accrues.

We think enough has been said to show that the judgment should be reversed, and, inasmuch as the action is grounded on the statute, it would be useless, in view of the evidence, to send the case back for retrial.

Judgment reversed.