PETERS v. STATE.

(*Jackson.*    June 8, 1896.)

1. FISH LAWS.    *Exception of private ponds does not embrace a lake.*

The exception of private ponds from the prohibition of the stat-
ute making it unlawful to take fish in the waters of this State
except by rod or line, does not extend to a body of water called
a lake, subject to periodic overflow by the Mississippi River,
and covering an area of 1,040 acres, of which one person owned
1,000 acres and another the remaining 40 acres.    (*Post, pp. 683–
686.*)

Act construed: Acts 1895, Ch. 127.

Case cited: 93 Pa. St., 458.

2. SAME.    *Exception of lakes of fifteen square miles valid.*

The exception of lakes having an area of fifteen square miles
and over, and subject to overflow or backwater from the Mis-
sissippi River, which is made in the statute prohibiting the
taking of fish in the waters of this State except by rod or line,
does not vitiate the statute.    The classification is not arbitrary
and unnatural, but reasonable, and resting on the idea that
such lakes, on account of their larger size and being period-
ically replenished from the river, are not liable to suffer thereby
such material waste or destruction of their stock of fish as
lesser lakes or streams.    (*Post, pp. 686, 687.*)

Constitution construed: Art. XI., § 8.

Act construed: Acts 1895, Ch. 127.

Case cited and approved: Morris v. Stratton, 89 Tenn., 497.

3. SAME.    *Constitutional power to enact.*

Either general or special laws, as the Legislature may deem
proper, can be enacted respecting the preservation of fish and
game under Const., Art. XI., § 13, authorizing the enactment
of such laws, and adding that they may be enacted and en-
forced in particular counties or geographical districts desig-
nated by the General Assembly.    (*Post, pp. 687, 688.*)

Constitution construed: Art. XI., § 13.

Act construed: Acts 1895, Ch. 127.

4. SAME.    *Ownership of fish.*

The owner of part of a lake has no constitutional right to the fish therein, which is unwarrantably interfered with by prohibiting them to be taken except in a specified, reasonable manner.    (*Post, pp. 688, 689.*)

Constitution construed: U. S. Const., XIV. Amendment.

Case cited: 142 Ill., 30 (S. C., 16 L. R. A., 684).

5. SAME.    *Legislative power to pass reaffirmed.*

The constitutional power of the Legislature to enact laws for the protection and preservation of game and fish is reaffirmed.    (*Post, pp. 688, 689.*)

Cases cited and approved: Maney v. State, 6 Lea, 218; 152 U. S., 133; 97 Ill., 320.

---

## FROM LAUDERDALE.

---

Appeal from Circuit Court of Lauderdale County. THOMAS J. FLIPPIN, J.

JAMES OLDHAM and THOMAS STEELE for Peters.

Attorney-general PICKLE, W. E. LYNN, and J. P. GAUSE for State.

BEARD, J.    The plaintiffs in error were indicted for, and upon trial were found guilty of, a violation of Sec. 1 of Ch. 127 of the Acts of 1895. This Act is entitled "An Act for the protection of fish in the State of Tennessee," and by its first section makes it "unlawful for any person or persons to catch, kill, or wound any · fish in any of the streams, lakes, rivers, or ponds in this State,"

by seine, etc., or "in any way," etc., "except by rod or line or trot line." It is provided, however, that "this section shall not apply to private ponds."

The few facts necessary for the determination of the questions presented by the plaintiffs in error on this appeal are as follows: There is in Lauderdale County, in this State, a large body of water, popularly called "Open Lake," or "Big Lake," which covers an area of 1,040 acres, lying in the low lands contiguous to the Mississippi River, and supplied by periodic overflows therefrom. Of this lake the plaintiff in error, Peters, owns one thousand acres, while the remainder, consisting of forty acres, called the "Arm," is the property of another. The plaintiffs in error have been for several years engaged together in seining this lake and capturing fish in that way for foreign markets, and have continued this practice since the passage of the Act in question. When called upon to answer the indictment in this case, their defense was that this was a "private pond," within the meaning of the proviso of the first section of that Act.

While it would be impossible to definitely fix a dividing line between a pond and a lake, yet that a distinction does exist is recognized not only in the language of the common people, but by Mr. Webster, who defines a pond as a body of water naturally or artificially confined, and usually of less extent than a lake, "and a lake as a large body of water contained in a depression of the earth's

surface." And we think it clear that this distinction was understood by the parties, who have given to this sheet of water the name of "Big or Open Lake." Conceding, however, that it may be called either a pond or a lake without doing violence to the rules of language, still it is not a "private pond" within the terms of this proviso. While it was the purpose of the Legislature to preserve the fish in our lakes, water courses, etc., as a food-supply for the public, and, to accomplish this, it placed an interdict on those methods that result in their wholesale destruction, yet this could be done without interfering with the owners of a "private pond." With the fish in such a pond the owner might do as he willed. To exercise this unlimited control, however, the property must be essentially private. It must be a sheet of water covering his own land, and such as no one could forbid him its use any more than the cultivation of the soil underneath, if it was free of the water. Lacking this element of exclusive proprietorship, we think it clear that plaintiffs in error cannot avail themselves of the protection of this proviso. As before stated, while Peters is the owner of one thousand acres of this lake, the remaining forty acres belong to another person. If the former is the owner of a private pond, then so is the latter, and we would thus have one body of water constituting two distinct private ponds. If the contention of plaintiffs in error is correct, then, under the protection of

this proviso, the proprietor of this "Arm" of forty acres, if he could invite all the fish of the lake into it, might, by the use of destructive methods, exterminate them, and yet be guilty of no wrong of which the public, or any individual member of it, could complain. This is equally true as to the owner of the one thousand acres.

In the words of the Supreme Court of Pennsylvania, in *Reynolds* v. *Coin*, 93 Pa. St., 458, cited in 12 Am. & Eng. Enc. of L., Vol. 12, p. 627, this body of water "must be treated as an entirety, and either the whole or none is private." Treating it as an "entirety," we hold that it is in no legal sense a "private pond."

But it is said that, even if plaintiffs in error are wrong in the above contention, yet they cannot be punished, because of the unconstitutionality of the Act.

1. It is insisted that it violates § 8 of Art. II. of the State Constitution. This objection is directed to § 5 of the Act, which provides that it "shall not apply to lakes in this State having an area of fifteen square miles and over, subject to overflow or backwater from the Mississippi River," etc. It is argued that this exception is "arbitrary and unreasonable." *Morris* v. *Stratton*, 5 Pickle, 497. We do not think so. This exception from the operation of the statute, of lakes covering such large areas and whose waters and fish supply are periodically replenished from the Mississippi River, was rested upon the natural and reasonable idea that they

Peters *v.* State.

would not be liable to suffer a material waste or destruction of their stock of fish through those exhaustive methods forbidden to lesser lakes, and to streams, etc. As the evil consequences which this legislation sought to avert was not likely to occur in these large lakes, so fortunately located for receiving fresh supplies, they were exempted from the operation of this statute, which was wisely directed to the preservation of the fish in the smaller lakes, streams, and ponds of the State.

2. Again, it is argued that it is void because violative of § 13 of Art. II. of the State Constitution. As we understand this insistence, it is this: that while the Legislature may pass laws for the protection and preservation of fish and game, yet these laws shall · not be general, but must be confined to particular counties or geographical districts. We do not think this contention warranted by any sound rules of construction. By the first clause of this section it is provided that "the General Assembly shall have power to enact laws for the protection and preservation of game and fish within the State." Under the terms of this clause, and in view of other provisions of the Constitution which prohibit class legislation, the Legislature might very well have deemed itself restrained from passing any other than general laws, and yet there might be localities where the protection of such statutes were very much needed, and other localities where they were not required and might be oppressive. Hence,

as if to meet all emergencies, and at the same time to put every constitutional objection to rest, it is provided in the concluding clause of this section that "such laws may be enacted and applied and enforced in particular counties or geographical districts designated by the General Assembly." In other words, these laws may be general or special, as the wisdom of the Legislature may from time to time suggest.

3. Finally, it is insisted that this Act is void because violative of the first section of the Fourteenth Amendment of the Constitution of the United States, in that it unwarrantably interferes with the property rights of the owners of lakes, etc. We think this contention equally unsound. It overlooks the fact that "fish in streams or bodies of water have always been classed by the common law as *feræ naturæ*, in which the riparian proprietor, or the owner of the soil covered by the water, even though he may have the sole and exclusive right of fishing in said waters, has, at best, but a qualified property, which can be rendered absolute only by their actual capture, and which is wholly divested the moment the fish escape to other waters." 2 Bl., 392; *People* v. *Bridges*, 142 Ill., 30 (S. C., 16 L. R. A., 684). But, in addition, the power of the Legislature to enact laws for the protection and preservation of game in the forests, and fish in the waters of the State, has been so frequently exercised, and, when challenged on constitu-

tional grounds, has been so uniformly maintained, that the question has now passed beyond the realm of debate. On this point we need only refer to the following, among the very many authorities: *Maney* v. *State*, 6 Lea, 218; *Lawton* v. *State*, 152 U. S., 133; *Morgan* v. *People*, 97 Ill., 320; Tiedeman's Lim. Pol. Pow., §§ 127 *f* and 125; *People* v. *Bridges*, *supra*.

The judgment of the Circuit Court is affirmed.