### STATE OF INDIANA v. LOWDER ET AL.

[No. 25,088. Filed October 6, 1926.]

1. FISH.—*"Private pond" within meaning of the fish law.*—If a pond is so connected with any public water that, at times of high water, fish can go in and out, it is not a "private pond" within the meaning of the law regulating fishing so as to exempt the owners of the surrounding land from prosecution for taking fish therefrom with a seine. p. 237.

2. FISH.—*Owner of pond connected with public waters not immune from prosecution for taking fish therefrom with seine.*— Where a pond was so connected with public water as to permit the migration of fish into and out of it at times of high water, the owner of the land on which the pond was situated would not have such exclusive interest in the fish therein as to be immune from prosecution for taking fish therefrom with a seine, and it would be immaterial that, at times of low water,

there was no connection between the pond and a river which, at high water, overflowed into it.   p. 237.

3. CRIMINAL LAW.—*Refusal of instruction assuming, that defendants charged with removing. fish from pond were not connected with department of conservation held proper.*—In a prosecution for taking fish from a pond with a seine, the court properly refused to give an instruction which assumed that the defendants were not connected with the department of conservation nor operating under its direction as authorized by §4743 Burns 1926 (Acts 1919 p. 375, §19), as that would have invaded the province of the jury.   p. 237.

4. FISH.—*Instruction that seining fish from pond which, at times, got so low as to cause fish therein to die was not unlawful, was erroneous.*—An instruction that if the pond from which defendants were charged with taking fish was not a permanent body of water or, at times, got so low as to cause the fish therein to die, taking fish therefrom with a seine would not be a violation of law, was erroneous, as the statute forbidding the use of a seine makes no exception as to streams or ponds which dry up, either wholly or partially, in dry seasons.   p. 239.

5. FISH.—*"Private pond," as used in the statute, means a "private pond" as defined at common law.*—A "private pond," to which the Criminal Code of 1905 refers (Acts 1905 p. 584, §§613, 619, §§2831, 2846 Burns 1926), means a body of water wholly upon the lands of a single owner, or of a single group of joint owners or tenants in common, which does not have such connection with any public water that fish can pass from one to the other; in other words, a "private pond" as defined in the common law.   p. 239.

6. FISH.—*An instruction defining "private pond" as defined by one statute held erroneous in a prosecution under another statute.*—In a prosecution for seining fish from a pond in violation of §619 of the Criminal Code of 1905 (Acts 1905 p. 584, §2831 Burns 1926), it was error for the court to instruct the jury that the words "private pond" had the meaning given in the act of 1913 p. 368, §6 (§2845 Burns 1926) regulating the transportation of fish caught in this state.   p. 239.

From Greene Circuit Court; *Thomas VanBuskirk,* Judge.

Carl Lowder and others were prosecuted for having unlawful possession of a seine and for taking fish therewith, and found not guilty, and the state appeals.   *Appeal sustained.*

*Arthur L. Gilliom,* Attorney-General, *Edward M. White,* Assistant Attorney-General and *Walter Shirts,* for the State.

EWBANK, J.—An affidavit in two counts was filed against appellees, which charge that on May 22, 1925, they unlawfully and knowingly had in their possession at Greene county, in the State of Indiana, a seine for the purpose of taking fish from the "Lattas Creek pond," which seine was not kept only for use in private ponds, and was not kept within two miles of Lake Michigan, or the Ohio river or the Wabash river, etc., and also that, at said county, they took with a seine 300 pounds of fish from the Lattas Creek pond, which was not then and there a private pond. To these charges they entered a plea of not guilty. The jury returned a verdict finding them not guilty, and the state, by reserved questions of law, seeks to challenge the action of the trial court in refusing to give an instruction asked by the prosecuting attorney, and in giving certain instructions on his own motion. The appellees have not favored us with a brief.

There was little dispute in the evidence, which was to the effect that the pond in question consisted of water in an old channel of White river, near the present channel of the river and near Lattas creek; that at that time the water in the pond was about three feet deep and 200 feet wide and extended in a half-moon shape about one-half mile; that it had been known as a pond for many years, witnesses who had known it for forty-five years or less testifying that it had always been cut off from the river and creek at low water since they could remember, but that, in times of heavy rainfall or freshets, the creek and river would overflow into the pond and connect with it, filling the pond to their level; that in the wet summer of the year before this action was commenced, the river and creek had overflowed the

pond two or three times, and in the winter and spring, the river frequently connected with the pond so that fish could pass from one to the other; that sometimes the river got so high as to overflow the pond and all the bottoms surrounding it; that the river had overflowed and connected with the pond earlier that same spring; that at the time of the alleged offense, the waters of the pond were partly on land owned by Homer Lowder and partly on land owned by Mrs. Reed Letsinger, without anything in the pond for a dividing line, and the lands of an adjoining owner were partly covered by the pond when the water was high; that defendants borrowed the seine from an owner of part of the land on which the pond was situated, and had permission from him and from the husband of the other owner of such land to seine fish from the pond; that the water in the pond sometimes would get so low in a dry season that the fish died, but witnesses for the defense denied ever seeing the pond entirely dry. Witnesses for the state, however, testified that it had gone dry five or six times in the past forty-five years. That the defendants took 300 pounds of fish from the pond with the borrowed seine, and put them in sacks, and that they took the fish with the intention of eating them.

The court gave instructions, the correctness of which is not challenged, that if the pond was so connected with any public waters that in times of fresh-

1-3. ets or high water fish could go into it from such public waters and out again, it was not a private pond, whether they might so come out again the same day, or the next season; that if at times of high water, the pond was so connected with public waters as to permit the migration of fish to and from it the owner of the land on which the pond was situated did not have such an exclusive interest in the fish therein

as to be immune from prosecution for taking fish therefrom with a seine; that the mere fact that, after the freshets and high water had receded, there was no longer, at low water, any connection between the pond and the river and creek which sometimes overflowed it would not make it a private pond; and that if the pond was located on two or more tracts of land owned by different persons, it would not be a private pond. These instructions correctly declared the law. *People* v. *Bridges* (1892), 142 Ill. 30, 31 N. E. 115, 16 L. R. A. 684; *People* v. *Lewis* (1924), 227 Mich. 343, 198 N. W. 957; *Peters* v. *State* (1896), 96 Tenn. 682, 36 S. W. 399, 33 L. R. A. 114; *Ex parte Fritz* (1905), 86 Miss. 210, 38 So. 722, 109 Am. St. 700; 11 R. C. L. pp. 1017, 1044. But the court refused to give a further instruction that if the water in the pond would dry up at certain periods, and, by reason thereof, at such times, any fish then in the pond would die, these facts would not make it lawful for the defendants in this action to remove fish therefrom by the use of seines. This instruction must have assumed it to be a fact that the defendants were not connected with the department of conservation, nor operating under its direction to take the fish "for purposes connected with fish or game culture, protection, preservation or propagation, or with scientific observation," since that department, by its agents and employees, is expressly authorized to take the fish "in any manner and at any time" for those purposes. §4743 Burns 1926, §19, Acts 1919 p. 375 (387). And the trial court did not err in refusing to give an instruction which would have invaded the province of the jury by purporting to declare the law on facts assumed to be true, instead of submitting to the jury for its determination the question whether or not those facts existed.

The trial court also gave an instruction (No. 12) to the effect that if the pond from which the fish were taken was not and is not "a permanent body of water where fish can have a reasonable abiding place throughout the year," or if it "at times gets so low or goes dry, thereby permitting the fish to suffer and perish" then "taking fish from such body of water with the seine described in the evidence would not be a violation of law." This was error. The statute which forbids taking fish with a seine in any of the waters of this state, except Lake Michigan, the Ohio river, certain portions of the Wabash river, and private ponds, and forbids having possession of a seine for any such purpose, does not contain an exception as to streams or ponds which dry up, either wholly or partially in dry seasons. §§2831, 2846 Burns 1926, §§619, 613, Acts 1905 p. 584 (733, 735). And this instruction did not purport to base the declared immunity from prosecution upon the fact that defendants had seined these fish out of the pond on behalf of the department of conservation to preserve their lives by transferring them to streams or ponds which did not threaten to become dry. Nor was there any evidence on which to base an instruction to that effect. The instruction was erroneous.

The act of 1905, *supra,* two sections of which the defendants were accused of violating, does not contain a definition of the words "private pond," as therein used. And that expression, as distinguished from the "waters of the state," was clearly used in the common-law sense of describing a body of water wholly upon the lands of a single owner, or of a single group of joint owners or tenants in common, which did not have such connection with any public waters that fish could pass from one to the other. *Peters* v.

*State, supra; Bannon* v. *Logan* (1913), 66 Fla. 329, 63 So. 454, L. R. A. 1916E 522; *Ex parte Fritz, supra; Sherwood* v. *Stephens* (1907), 13 Idaho 399, 90 Pac. 345; *People* v. *Lewis, supra; People* v. *Collison* (1891), 85 Mich. 105, 48 N. W. 292; *Benscoter* v. *Long* (1893), 157 Pa. 208, 27 Atl. 674; *Reynolds* v. *Commonwealth* (1880), 93 Pa. 458; *State* v. *Blount* (1885), 85 Mo. 543. But eight years after that act was passed, the legislature enacted another statute with relation to taking fish otherwise than by the use of a seine, and transporting fish caught in public waters, with exceptions as to "the owners of private ponds," which contained a provision that "the words 'private ponds,' as used in this act, shall be construed to mean and include any body of water of not greater than twenty acres in area, lying wholly within or upon the land of any landowner." §2845 Burns 1926, Acts 1913 p. 368 (370), §6.

Obviously, this statutory definition of the words "private ponds," as used in the act of 1913, omits important elements of the common-law definition, as used in the earlier statute. But the court assumed that the statutory definition was controlling in this action, and gave an instruction (No. 7) by which it told the jury engaged in trying these defendants charged with the offenses of seining and possessing a seine, in violation of the act of 1905, *supra,* that "the statute defining the words 'private pond'" defined it in the language above quoted from the act of 1913. This was error. The expression "private pond," as used in the act of 1905, under which defendants were being prosecuted, must be understood in its common-law sense, as declared by the other instructions which the court gave, and not in the more restricted sense in which it was used eight years later in the act of 1913.

The appeal is sustained, at the costs of the appellees.