JAMES CRANE et al., Appellants, v. W. E. WINSOR AND FRANK RANDALL, Respondents.

1. WATER RIGHTS AND OWNERS OF DITCHES.—The owners of a water ditch are entitled to have the water flow therein in its natural state, and when they claim such water by prior appropriation, its corruption by any stranger is a private nuisance.

2. EQUITABLE INTERFERENCE.—Equity will restrain the continuance of a private nuisance at the suit of the sufferer.

5. PLEADING IN SUCH CASE.—Complaint in case at bar commented on and held sufficient.

Appeal from the Third Judicial District Court.

The complaint, omitting the formal parts, was as follows:

Plaintiffs allege that at the time of the earliest settlement made in Salt Lake County, Utah Territory, A. D. 1847, there was and still is a well defined stream of water, known and designated as Butterfield Creek, flowing from a canyon in the mountains, situated at and near to the southwest corner of Great Salt Lake Valley, in Salt Lake County, Utah, and flowing northeast down said canyon (Butterfield canyon) a distance of eight or ten miles or more.

That in 1851 a settlement known as Herriman's Fort was made, and it is situated on what was then the public lands of the United States, which on the survey of the United States being made, proved to be in township 3 south, range 2 west, and a little northeast of the mouth of said canyon in Great Salt Lake Valley, Salt Lake County, Utah, which said settlement was and now is on land that, with irrigation, is good and productive, but without irrigation is neither good nor productive, and in a country surrounded with grazing lands suited to the keeping of all kinds of domestic animals.

That the said settlement has been in continuous existence ever since the year 1851, and is now in existence. That it consists of some two hundred and fifty persons in the aggre-

gate, some forty of whom are the heads of families. That these heads of families own and occupy farms and gardens under cultivation (there being dwellings and out-houses) and own stock; which said farms, gardens, stock and inhabitants are sufficient to use all the water flowing from said canyon.

That these plaintiffs respectively are residents of said settlement, and have been such residents for more than twelve years last past, own and cultivate farms and gardens; own and occupy dwellings there being; own stock there kept for use, and are the heads of families there living. That they are, in connection with the other heads of families, the owners of the water flowing in said creek, and for more than twelve years last past have had a common interest and right in and to said water, in connection with the other settlers, residents and inhabitants of said settlement.

That in the year 1851, the settlers in said settlement, by mutual consent, and pursuant to the customs of the country at that time prevailing, constructed a water ditch from said stream to said settlement, a distance of about four miles, sufficiently large to contain all the water flowing in said stream, turned the water there flowing into said ditch, brought it to said settlement and there appropriated it to their use, dividing the water equitably and as justly as they knew how among said settlers, and during the time which has since elapsed up to the unlawful and wrongful interruption hereinafter set forth, the plaintiffs and these settlers have without hindrance enjoyed the entire and exclusive use and benefit of said water in a pure state.

That on the 15th day of October, 1876, the said W. E. Winsor and Frank Randall unlawfully and wrongfully erected or caused to be erected on the banks of said stream, and above said settlement, a machine or mill for crushing ore, called a crusher, and unlawfully and wrongfully commenced crushing ore therein. To do which they unlawfully and wrongfully took the water from said stream, against the consent of said

settlers or any of them, and caused it to pass through said crusher when crushing ore, and afterwards turned the water back into said stream, and from that time till the present they have continued to unlawfully and wrongfully use said water in the manner aforesaid, and threaten still to continue so to do.

These plaintiffs say that the ore therein crushed as aforesaid contains large quantities of silver, lead and other minerals and poisonous substances, and that in the process of crushing and milling said ores, various chemical poisons have been and are continually used, such as arsenic and other poisons, by said defendants, that in causing the water of said creek to pass through said mill or crusher when crushing the ore aforesaid, the lead and other mineral poisons therein contained and other poisonous substances used in milling said ores, enter into said water, are taken up by it and therein held in solution to an extent that said water became impure, unhealthy and dangerous to life, including the life of ·man, of animals and of vegetable life.

That the said defendants, by using the said water as aforesaid and turning the same in its impure state into the stream, to flow down into and through said settlement, have erected a nuisance injurious to the health, offensive to the sense, which obstructs the full use and enjoyment of the property of the said settlers and these plaintiffs, annoys, injures and endangers their comfort, repose, health and safety, and renders them insecure in their lives and in the use of their property.

That there are no means by which said settlers can obtain water for any purpose whatever, except to use the water of said creek, and that in using the same since said defendants have erected said nuisance, a large amount of stock, the property of said settlers, has died by reason of its use; and which stock was of great value, to-wit, four hundred dollars; also from its use one person has died.

These plaintiffs further say, that on the 27th day of January, 1877, the inhabitants of said settlement, at a meeting called for that purpose, passed a resolution authorizing and request-

ing these plaintiffs, in their own behalf and in behalf of said settlers, to take such measures as the law provides to cause said nuisance to be inquired into and abated, for the reason that these plaintiffs aver if the nuisance continue it will cause an irreparable injury to the farms, gardens and orchards of the said settlers, and produce an abandonment of their dwellings and break up their settlement.

The other facts appear in the opinion.

*Snow & Snow*, for appellants.

The act of Congress of July 26, 1866, 14 Stat. at Large, 253, directly recognizes these rights.

Has a case been made for equitable interposition? Equity will certainly restrain the continuance of a private nuisance at the suit of the sufferer, or a public nuisance if special injury be shown. *Walker* v. *Shepherdson*, 2 Wis. 394.

The diversion or corruption of a water course is a private nuisance. *Toulumne Water Co.* v. *Chapman*, 8 Cal. 397; Wood's Law of Nuisance, §§ 677–691. See cases cited above on same point.

. Allegations showing an intended continuance of diverting water are sufficient.

Equity will not interfere for a past diversion, but will for a future. *Coke* v. *Simpson*, 7 Cal. 340; Wood's Law of Nuis. pp. 338–9.

And continued diversion of water from a party entitled to it, is such an irreparable injury as a court of equity will redress; by parity of reason, the fouling also. *Ibid.; Toulumne Water Co.* v. *Chapman*, 8 Cal. 397; *Walker* v. *Shepherdson*, 2 Wis. 394; Adam's Eq. 210, 211; Willard's Eq. 392; Story's Eq. §§ 927–8; Wood's Nuisance, p. 706, § 691.

This is a special branch of equity jurisprudence. Wood's Law of Nuisance, pp. 338–9; Angell on Water Courses, pp. 444, 445.

The complaint brings all the facts within these rules; the

right, the corruption or fouling, the continuance since 1875, the threatened continuance. Allegations 6, 10, complaint.

No brief on file for respondents.

EMERSON, J., delivered the opinion of the court:

The case comes to this court upon demurrer to the complaint which was sustained in the court below with leave to amend. The plaintiffs elected not to amend, and accordingly final judgment dismissing the complaint passed for the defendants.

The demurrer admits the facts as alleged in the complaint. From that it appears that the settlers of " Herriman's Fort," who authorized these plaintiffs to bring this suit in their behalf, many years ago constructed a ditch leading from Butterfield Creek to said settlement, by means of which they appropriated all the water flowing in said creek, and that all the water is needed for agricultural and culinary purposes. That in 1876 the defendants erected, on the banks of said stream and above said settlement, an ore crusher, and commenced and still continue, and threaten to continue in the future, the business of crushing ore therewith. That in the prosecution of their said business, they wrongfully and against the consent of said settlers, take a portion of the water from said stream, and after passing it through their crusher, where it takes up and holds in solution certain chemical poisons contained in the ores, and other poisons used in its reduction, turn it back into the stream, where it mingles with the water flowing down to said settlement. That the water when it reaches the settlement is rendered so impure and poisonous as to be destructive of both animal and vegetable life. That by reason of its use in this impure state, one person had died, and a large amount of stock had been killed. The prayer, among other things, asks that the defendants be restrained from using the water, in any manner inconsistent with the rights of said settlers, and for damages to be assessed.

The question is, does the complaint state such a case as entitles the plaintiffs to the relief asked, or any relief? Taking

James Crane et al. v. W. E. Winsor and Frank Randall.

the statements of the complaint as true, we are of opinion that the plaintiffs are clearly entitled to their injunctive relief. They cannot in this action recover damages for the destruction of property owned by them in severalty. The statement of the destruction of property and loss of life consequent upon the use of the water thus deteriorated in quality by the defendants, may be regarded as surplusage, or as a mere evidence of fact going to show that the water was polluted to such an extent as to make it dangerous to life, and unfit for the uses for which it was appropriated.

The plaintiffs, as the owners or tenants in common of the water ditch and the water flowing therein, by virtue of their prior appropriation, and the corruption of the water by the defendants is a private nuisance. The right thus secured to the plaintiffs is to have the water flow to them in its natural state. If the use the defendants put the water to did not deteriorate it in quality, then the plaintiffs would have no right of action so long as the quantity was not materially changed. Suppose the defendants had diverted all or any considerable portion of the water flowing in this creek, there could be no doubt about the right of the plaintiffs to an injunction restraining the defendants from such diversion, upon a bill framed substantially like the one in this case. Taking the complaint as true, the injury to the plaintiffs is more serious than would arise from the mere diversion of the water, from its being rendered dangerous to human life. The rights acquired by the plaintiffs should be protected by the court.

The complaint, although inartificially drawn, sets out with sufficient clearness and certainty the character or nature of the plaintiffs' claim; the character, nature and extent of the interference on the part of the defendants, and the character in which the plaintiffs sue. The injury complained of is to the common property of the plaintiffs, and constitutes a private nuisance. The demurrer should have been overruled.

The judgment of the court below is reversed, and the cause remanded, with instructions to overrule the demurrer.

SCHAEFFER, C. J., and BOREMAN, J., concurred.