# Alabama Consolidated Coal & Iron Co. v. Turner.

*Damages for Polluting Stream and Diminishing Flow of Water.*

(DECIDED NOV. 23, 1906, 39 So. REP. 603.)

1.  *Waters and Water Courses; Rights of Riparian Owner; Diversion: Pollution.*—A riparian proprietor has an equal right, with all other riparian owners, to have a stream, flowing through or by his lands, flow in its natural state, through its ancient channel, without diminution in quanity or alteration in quality; and a diversion of such stream or a pollution of the water, so as to deprive him of its use, is an actionable nuisance.

2.  *Same; Actions; Complaint; Joinder.*—A complaint, the several counts of which, allege a diversion of large quantities of water from the stream thereby preventing the accustomed flow; and

the construction on said stream of a dam, which collects debris and discharges it upon the plaintiff below, to the injury of his dam; and the operation by defendant of ore washers, which pollute said stream and cause mud, debris and other accumulations to come down on plaintiff, to the damage of his dam and the pollution of the water, states a good cause of action, and is not subject to demurrer for a misjoinder of causes.

3. *Same; Appropriation; Rights Acquired by Adverse User.*—The exclusive use of the waters in a stream by a riparian owner in substantially the same manner for more than ten years, with the knowledge of the lower riparian owner, and without interruption from him, raises a presumption of title as against a right in any other person, which might have been, but was not asserted.

4. *Same; Artificial Barrier; Construction; Negligence; Materiality.*—The degree of care used in constructing artificial barriers and maintaining them across a waterway, is immaterial in determining plaintiff's right to recover damages in a suit counting for damages on the active creation by defendant of a nuisance, and not upon a wrong arising from defendant's negligence in construction.

5. *Same; Action for Diversion; Defense.*—In an action by a lower riparian proprietor for the diversion of water from a stream by an upper riparian proprietor, a plea setting up that the upper owner used the waters for manufacturing purposes in a reasonable manner, and then returned the same to the stream with no material diminution in amount, states a good defense, and is not subject to demurrer.

6. *Same; Artificial Barriers; Injury to Lower Owner; Liability.*— A riparian owner who constructs dams in the usual way, and such dams as will hold water coming down in usual and customary freshets, is not liable to the lower owner for damages resulting from the failure of the dam to retain the water in an extraordinary flood, and the consequent flooding of the lower lands or the injury of the lower dam.

7. *Evidence; Value of Property; Opinion Evidence.*—The market value of property may be shown by the opinion of witnesses, based, of necessity even in fact, on hearsay.

APPEAL from Talladega City Court.

Heard before Hon. C. K. MILLER.

Action for damages for taking water from a running stream, and polluting the stream. The complaint alleges after setting forth that plaintiff is the owner of a tract

[Alabama Consolidated Coal & Iron Co. v. Turner.]

of land and describing it, and that plaintiff has a mill and mill pond on said tract of land across and on Cheaha creek, that on said Cheaha creek, above plaintiff's premises and near thereto, located in T. county, Ala., defendant has construed and is now operating a pumping station, whereby defendant has diverted and is now diverting large quantities of water from the channel of said creek, and preventing said waters from flowing as they were accustomed to flow down said stream and into said pond of plaintiff's, wherefore plaintiff avers and charges that by said wrongful act of the defendants he is and has been greatly injured and damaged, and has been put to great inconvenience and trouble, all of which damage up to this time and accruing in 12 months prior to the bringing of this suit amounts to the sum of $3,000 and avers that near said creek and above the lands of plaintiff defendant has constructed a dam, and in said dam has constantly allowed and caused to collect large quantities of red mud, filth, and debris, and within said last 12 months said dam has from time to time broken and discharged its accumulated contents of red mud, filth, and debris into the waters leading into said Cheaha creek, and down to the dam of plaintiff across Cheaha creek, filling up said dam of plaintiff to such an extent as to materially lessen the amount of said water of right accustomed to accumulate therein; and plaintiff avers that defendant's dam has so broken and discharged its red mud, filth and debris in plaintiff's dam as aforesaid by reason of the negligence of the defendant, wherefore plaintiff avers that by said wrongful acts of the defendant he is and has been within the last 12 months prior to the bringing of this suit greatly damaged and injured and put to great expense and trouble and inconvenience, and charges defendant with operating ore washers and willfully opening the floodgates to the dam, and letting down on plaintiff red mud, filth and debris, and rendering the dam and other property less valuable, all within 12 months prior to bringing if suit.

There were two assignments of demurrer setting up misjoinder of causes of action, one for diverting water and the other polluting water. These were overruled.

41

Counts 4 and 5 were added by way of amendment, and are enlargements and amplifications of counts 2 and 3. Demurrers were overruled to these counts.

Defendant's plea 4 alleged that the defendant for more than 10 years prior to the bringing of plaintiff's suit has used the waters of said Cheaha creek in the same manner as alleged in the complaint that it was used by the defendant to the injury of the plaintiff, and defendant avers that such user was continuous, adverse, and under a claim of right, and for more than 10 years before the bringing of this suit, and was so used with the knowledge of the plaintiff and that by virtue of such user defendant has acquired the right to continue such use. Plea 5 was a short plea of the statute of 10 years. Plea 8, interposed to the first and fourth counts, alleged "that the water diverted by its pumping station was pumped out of Cheaha creek at a pumping station owned by it to its ore washers and furnaces at Ironton; that the water so pumped, after passing through its washers, was returned to Cheaha creek through Fane's creek; and that no water was used from that pumped, except that is necessary for the purpose of operating its plant, and that all the water so used is used with due care to the rights of the lower riparian owner, and that there is no material diminution of the amount returned from that diverted, the same being used in a reasonable manner for the manufacturing purposes above set forth."

Demurrers were interposed to these pleas, and sustained by the lower court.

Charge 12, requested by the defendant and refused, was: "The court charges the jury that if the mud dams constructed by the defendant were constructed in the usual manner, and that such mud dams so constructed were properly constructed, and were so constructed as to be able to hold and resist all the water coming from the ordinary, usual, and expected freshets, then the defendant would not be liable for damages resulting from the breaking of such dams on account of any extraordinary and entirely unexpected floods."

KNOX, DIXON & BURR, for appellant.—"The general rule is, that a *riparian owner* who erects a dam is responsible for all the damages caused by it at ordinary stages of water, or at times of ordinary, usual and expected freshets, but he is not liable for injuries resulting from unexpected or unusual freshets."—8th Am. & Eng. Ency Law (2d Ed.) p. 714; 8th Am. & Eng. Ency. Law (2d Ed.) p. 717; 10th Am. & Eng. Ency. Law (2d Ed.) p. 243; 13th Am. & Eng. Ency. Law (2d Ed.) p. 693; *Avery v. Vermont Electric Co.*, 59 L. R. A. (note) p. 876.

If a dam or other structure is so constructed as to be able to resist all of the waters coming from usual and ordinary floods, the owner of the structure is not liable for damages resulting from its insufficiency to stand against extraordinary floods.—*Columbus & Western Railway Co. v. Bridges*, 86 Ala. 452; *Arndt v. City of Cullman*, 132 Ala. 551.

"A charge cannot be considered abstract when there is any evidence, however weak, tending to support it."—*Jones v. Foot*, 36 Ala. 450; *Hair v. Little*, 28 Ala. 236.

"The right, by means of a dam, to overflow lands, or to raise the water in a stream to the injury of an upper mill privilege, or to detain or divert the water, or to use it in any particular way without interruption may, like easements in general, be acquired by an uninterrupted and adverse enjoyment for twenty years, or for the period of time, whatever it may be, limited by the statute of limitations for the right of entry upon land."—8th Am. & Eng. Ency Law (2d Ed.) p. 711; *Avery v. Vermont Electric Co.*, 59 L. R. A. 838 (note.)

"If a proprietor has made a special use of the water, by penning it up and flowing if back upon the proprietor above, or holding it back from the proprietor below, or by diverting it, and has so used the water without resistance or opposition from other proprietors, but has made a use which is continuous, uninterrupted and adverse, for the period of time prescribed by the statute of limitation for entry upon lands, a grant would be presumed for such a use."—28 Am. & Eng. Ency Law (1st Ed.) p. 1002.

"It is the established doctrine, that the exclusive enjoyment of water, or any other easement, in a particular way, for a length of time which is the period of the statute of limitation, enjoyed without interruption, is sufficient to raise a presumption of title as against the right of any other person, which might have been, but was not asserted."—*Stein v. Burden,* 24 Ala. 148; *Wright v. Moore,* 38 Ala. 596; *Roundtree v. Brantley,* 34 Ala. 552; *Nininger v. Norwood,* 72 Ala. 277; *Crabtree v. Baker,* 75 Ala. 91; *Ulbright v. Eufaula,* 87 Ala. 587.

"Plea of a general issue amounts solely to a denial of the plaintiff's cause of action and any other matter of defense must be pleaded specially."—Section 3295, Code 1896; *Howard v. Wallace,* 81 Ala. 238; *Norton v. Kumpe,* 121 Ala. 446.

Statute of limitation or of prescription is a special defense and must be specially pleaded or benefit cannot be obtained under the general issue.—*Huss v. Central Railroad & Banking Co. of Ga.,* 66 Ala. 472; *Bolling v. Jones,* 67 Ala. 508; *Mayor and Aldermen of Huntsville v. Ewing,* 116 Ala. 576.

"In an action for the diversion of water, the defendant, cannot have the benefit of an adverse user or prescription as a defense unless it is set up by a special plea, and such matter could not be provable under the general issue."—Enc. of P. & P., (Vol. 13), pg. 290; *Matthews v. Ferrea,* 45 Cal., pg. 51; 1 Chitty on Pleading, page 518 and notes; *Thornton v. Dwight Mfg. Co.,* 120 Ala. 656.

The rule is that injury results to a party against whom error was made when a demurrer is improperly sustained to a plea, and certainly will work a reversal unless it is affirmatively shown that no injury was done the appellant.—*Lambie v. Sloss Iron & Steel Co.,* 118 Ala. 427; *Mitcham v. Smith & Moore,* 73 Ala. 542; *Graham v. Woodall,* 86 Ala. 313; *Rice v. Drennen,* 75 Ala. 335; *Rigsby v. Norwood,* 34 Ala. 129; *Owings v. Binford,* 80 Ala. 421; *Fails v. Weisinger,* 11 Ala. 801; *Pingston v. Green,* 9 Ala. 19; *L. & N. R. Co. v. Hall,* 131 Ala. 161.

"The statute requires the causes of demurrer be stated specifically, and prohibits an objection by way of demur-

rer which is not distinctly stated."—*The State v. Gard-ner*, 45 Ala. 46; *Lowry v. Newsom*, 51 Ala. 570; *Daniels v. Hamilton*, 52 Ala. 105.

Though pleading may be subject to demurrer, if it be not subject to the objection particularly assigned, the demurrer is properly overruled.—*Daniels v. Hamilton, supra; Eads v. Murphy*, 52 Ala. 520.

"A reasonable use of the water of a stream by an upper riparian proprietor is allowed under modern decisions, although some damage and inconvenience may thereby result to a lower riparian owner. Especially is this so in regard to the necessary manufacturing industries."—*Tenn. Coal, Iron & Ry. Co. v. Hamilton*, 100 Ala. 660; 85 Am. State Reports, page 712 (note 2).

"An upper riparian proprietor can use the water of a stream in any quantity that he desires, provided in using it he uses due care to the rights of the lower riparian owner, and he can take out of the stream all or any portion of the water, provided the same is returned without any material diminution to the stream from which it was taken and a riparian owner below the point where the water is returned to the stream cannot complain of its use in such manner."—*Tenn Coal, Iron & Ry. Co. v. Hamilton, supra.*

BROWN, McELDERRY & HARRISON, for appellee.—"Diversion of the water of a stream is an act continuous in its character; and each effluence of the water is a continuing nuisance. Each successive overflow being a new wrong, a nuisance continued imposes a corresponding obligation to return such water to the channel of the stream."—*Stein v. Burden*, 29 Ala. 127; *Calvick v. Swin burne*, 105 N. Y. 503.

"The rule is, as laid down by Wood, that when a wrongful act, amounting to a nuisance, which of itself creates a complete and permanent injury, the statute will run from the completion of the thing creating the nuisance; but where the nuisance is permanent and the injury from it is continuous and increasing, successive actions for damages will lie, and the plaintiff can recover all damages not barred by the statute accruing up to the

commencement of the suit.—*Whaley v. Wilson*, 112 Ala. 631.

The statute of limitations for a nuisance being one year and each successive overflow being a new wrong, the statute of limitations of ten and twenty years have no field for operation in this case except it be to show that plaintiff had not, and the defendant had title to the water diverted; and, as in this case, the plea of not guilty was pleaded and under it plaintiff had of necessity to prove his title and defendant could prove his in bar of the action, there was no necessity for pleas four and five plead by the defendant.—*Beal v. Falmor*, 122 Ala. 414.

But if there was, defendant's plea numbered five is clearly subject to plainaiff's demurrers to said plea in that same did not aver or show that the interference with plaintiff's rights had existed during the period of prescription.—*Wright v. Moore*, 38 Ala. 593.

For same reason that there can be no adverse user of light and air, there can be none of running water.— 19 Am. & Eng. Ency. of Law, 119.

"There can be no prescription for a public nuisance." —*Reed v. Mayor*, 92 Ala. 348.

"The pollution of a flowing stream by emptying into it the sewerage of a city, contaminating its waters and rendering it unfit for use by persons through whose premises it flows, is a public nuisance."—*Mayor v. Land*, 34 So. Rep. 613; *Ferguson v. City of Selma*, 43 Ala. 398

And so, in Alabama the diversion of the waters of a stream used for milling is a public nuisance.—*Kinney v. Kaufman*, 116 Ala. 318.

Since 1811 the legislature of Alabama has recognized the waters of all flowing streams, susceptible of being used for milling purposes as public utilities, authorizing the exercise of eminent domain to use same; and, "any nuisance working hurt, inconvenience or damage to the king's subject is a public nuisance."—Code of Alabama, § 1728; 3 Blackstone Com., 216, margin; *Hendricks v. Johnson*, 6 Port. (Ala.) 471.

And that the diversion of the water was a continuous nuisance.—*Burden v. Stein*, 29 Ala. supra.

[Alabama Consolidated Coal & Iron Co. v. Turner.] .

The test under the laws of Alabama is the adaptability of the water for the purposes of milling, whether they are or in fact have been used by the public or are capable of being used in their natural condition as motor power for mills.—*Walker v. Allen*, 72 Ala. 456.

Because the damage sued for is for one year, and the use of said waters for other ten years .is no bar to this suit.—*Culrick v. Swinburne*, 105 N. Y. 503; *Whaley v. Wilson*, 112 Ala. *supra; S., A. & M. Ry. v. Buford*, 106 Ala. 313.

There can be no prescriptive right to maintain or continue the pollution or diversion of the waters of a stream, susceptible of being used for milling purposes, because such pollution or diversion would legalize a nuisance invading the peace and safety of the people by depriving the public of an utility recognized by the laws of Alabama as public.—*Brown's case* 2 McLean 382; *Brown's Maxims*, 1-2 margin; 4 Hawk P. C. 349.

If there was error in sustaining the demurrers to pleas four, five, six and eight, or any of them, it was error without injury, since under the undisputed facts the matters set up in them would have been no defense. —*Carter v. Oden*, 121 Ala. 165.

The wrongful sustaining of demurrers to a special plea when the defendant might have had the benefit of the same under his other pleas, is at most error without injury.—*Powell v. Astor*, 36 Ala. 140.

The defendant's sixth plea was bad, "because the foundation of the suit being the active creation of a nuisance, and not merely a wrong arising from negligence, the degree of care used by the defendant 'in constructing its dams and operating its business was immaterial in determining the right to recover actual damages."—*Central of Ga. Ry. v. Windhouse*, 126 Ala. 560.

"Any diversion or obstruction of the water which substantially diminishes the volume of the stream so that it does not flow "*ut correre solebat*," is an infringement of the right of other owners of land through which a water course runs and creates a nuisance—*Tenn. Coal & I. Co. v. Hamilton*, 100 Ala. 259.

"The argument then that a party who diverts water and provides the means for its return, may then rest— that he may then continue to abstract large quantities of water, which water is not in fact restored to its accustomed channel, canot be supported."—*Stein v. Burden,* 29 Ala. 127.

But if the plea was good, the defendant had the benefit of it under the evidence allowed to be offered in this cause under the general issue, and cannot complain. —*Farmer's case,* 97 Ala. 142; *Tutwiler v. McCartney.* 121 Ala. 356.

"It is settled in this court that, when a charge is asked and refused, it will be presumed to have been abstract, unless the contrary is shown by a statement of the evidence."—1 Brickell's Dig., 338 No. 40; *Dent v. Portwood,* 17 Ala. 242.

"A charge based partly or entirely on a state of facts of which there does not appear to have been any evidence, is abstract and should be refused."—1 Brickell's Dig. 338, No. 41.

"A charge requiring explanation or qualification may be refused."—1 Brickell's Dig. 338, No. 60; *Rolston v. Langston,* 26 Ala. 660.

"A charge which singles out any particular fact of the evidence and bases a conclusion of law thereon is improper as calculated to mislead the jury."—*L. & N. R. R. Co. v. Hunt,* 13 So. Rep. 130.

In the admission of non-expert testimony as to value the court did not err.—*Wood v. Reynolds,* 32 Ala. 384: *Amer. Oak Ext. v. Ryan,* 112 Ala. 345.

And if the court did err, the admission of incompetent evidence of a fact, proved by competent evidence or otherwise established is not prejudicial.—*Milliken v. Mound,* 110 Ala. 387; *Tyson v. Chestnut,* 118 Ala. 387.

HARALSON, J.—The principles of law involved in the decision of this case have been the subject of repeated decisions in this and other courts. We may refer to these, especially from our own court, as furnishing a guide for the determination of questions presented.

In the old case of *Stein v. Burden,* 29 Ala. 127, 65 Am. Dec. 394, it was held, that a riparian proprietor has no property in the water itself which flows through his land, but a simple *usufruct* while it passes along; that he may use the water passing through his land as he pleases, subject among other things to the condition, that after using it, he return the water to its ancient channel; that where a proprietor has diverted water from its accustomed channel, to the injury of a land owner on the stream below him the water should be returned into the ancient channel, at the cost of the defendant. Many authorities are referred to as sustaining these principles. It was again said: "Diversion of the water of the stream is an act continuous in its character, and each effluence of water, resulting from the unauthorized act of another, is a wrong done to the proprietor below, if thereby the flow of the stream is materially diminished. It is a continuing nuisance, and an action lies for the damages, *toties quoties.* Each successive flow being a new wrong, a nuisance continued, imposes a corresponding contemporaneous obligation to return such water to the stream."

In the later case of *Tenn. Coal I & R. R. Co. v. Hamilton,* 100 Ala. 252, 14 South. 167, 46 Am. St. Rep. 48, the same principles are declared and emphasized. It was said: "The old maxim, '*aqua currit, et debet currere, ut currere solebat,*' is familiar to all. It means in practical application that water is the common and equal property of everyone through whose domain it flows, and that the right to each to its use and consumption, while passing over his possession is the same. He must so use it as not to destroy, or unreasonably impair the equity rights of others."

The general rule is often stated to be that "every riparian proprietor has an equal right to have the stream flow through his land in its natural state, without material diminution in quantity, or alteration in quality. * * * Any diversion or obstruction of the water which substantially diminishes the volume of the stream, so that it does not flow *ut currere solebat,* or which defiles and corrupts it to such a degree as essentially to impair its purity and prevent the use of it for any of the rea-

sonable and proper purposes to which running water is usually applied, such as irrigation, the propulsion of machinery, or consumption for domestic use, is an infringement of the rights of the owner of land through which a water course runs, and creates a nuisance for which those thereby injured are entitled to a recovery."

In Gould on Waters it is declared, that actions may be maintained for the following causes: "The casting upon one's own land of dirt and foul water, or substances which reach the stream by percolation;   *   *   *   the letting of water made noxious by precipitation of minerals,   *   *   *   or rendering the water unfit for domestic, culinary or mining purposes, or for cattle to drink of, or fish to live in, or for manufacturing purposes."

In one aspect of the case, still another authority is pertinent: "Where one who owns land on a stream, uses the water to wash ore taken from his land, and then allows the water to return to the stream so polluted as to be unfit for watering stock or for domestic uses, for which it was formerly used, by a lower riparian owner, and from which there is a deposit of mud or refuse ore on the land of the lower riparian owner impairing its fertility, he is liable to an action for damages to the lower riparian owner."—*Drake v. L. E. C. I. & R. Co.,* 102 Ala. 501, 14 South, 749, 23 L .R .A. 64, 48 Am. St. Rep. 77.

From the foregoing principles, it appears to be manifest, that the demurrers to the different counts in the complaint were properly overruled.

The first and second pleas were the general issue—the third was the statute of limitations for one year. On these issue was joined.

The fourth and fifth set up the statute of limitations of ten years, that defendant commenced the use of the water in Cheaha creek in the manner complained of in plaintiff's complaint, more than ten years before plaintiff's suit was commenced, and defendant has used the water in substantially the same manner continuously since that time, with the knowledge of the plaintiff, and for this reason has acquired the right, as against the plaintiff, to use the water, the use of which is the basis of plaintiff's action.

[Alabama Consolidated Coal & Iron Co. v. Turner.]

A demurrer to these pleas was sustained, and in this, we apprehend the court erred. The question seems to have been definitely settled in *Stein v. Burden*, 24 Ala. 148, 60 Am. Dec. 453, and approval by other adjudications of the court. As was then said: "It is the established doctrine, that the exclusive enjoyment of water, or any other easement, in a particular way, for the length of time which is the period of the statute of limitations, enjoyed without interruption, is sufficient to raise a presumption of title, as against a right in any other person, which might have been, but was not asserted."—*Ulbricht v. E. W. Co.*, 86 Ala. 592, 6 South. 78, 4 L. R. A. 572, 11 Am. St. Rep. 72; *Crabtree v. Baker*, 75 Ala. 91, 51 Am. Rep. 424; *Nininger v. Norwood*, 72 Ala. 285, 47 Am. Dec. 412; *Wright v. Moore*, 38 Ala. 593, 82 Am. Dec. 731.

Angell on the Law of Water Courses, § 205, holding to the doctrine that any man has the right to have the advantage of a flow of water on his own land, without diminution or alteration, lays down the doctrine, that an adverse right may exist founded on the occupation of another, stating: "And although the stream be either diminished in quantity, or even corrupted in quality, as by means of the exercise of certain trades, yet if the occupation of the party so taking and using it, has existed for so long a time as may raise the presumption of a grant, the other party, whose land is below, must take the stream subject to such adverse right."—1 Am. & Eng. Ency. Law (2d Ed.) 875; 22 Am. & Eng. Ency. Law (2d Ed.) 1187.

The sixth plea was erroneous and subject to demurrer. The foundation of the suit being the active creation of a private nuisance, and not merely a wrong arising from negligence, the degree of care used by defendant in the construction of waterways is immaterial in determining the right of plaintiff to recover actual damages from it.—*C. of G. R. R. Co. v. Windham*, 126 Ala. 560, 28 South. 392.

The eighth plea to the first and fourth counts was good. and not open to the grounds of demurrer interposed to them. But it affirmatively appears from the bill of exceptions, that the defendant had the benefit of

the defense made by said plea under the general issue, and at most it was error without injury.—*L. & N. R. R. Co. v. Hall,* 131 Ala. 161, 32 South. 603; *Tutwiler v. McCarty,* 121 Ala. 356, 25 South. 828.

Charge 12, requested by defendant, should have been given. If the facts hypothesized in said charge were shown to be true, under the decisions of this court, the conditions referred to in said charge, exempted defendant from liability on account of the breaking of said dams.—*Columbus & W. R. Co. v. Bridges,* 86 Ala. 449, 5 South. 864, 11 Am. St. Rep. 58; *Arndt v. City of Cullmann,* 132 Ala. 551, 31 South. 478, 90 Am. St. Rep. 922; 24 Am. & Eng. Ency. Law (1st Ed.) 948; 10 Am. & Eng Ency Law, 245; 10 Am. & Eng. Ency Law, (2d Ed.) 695.

There was no error in allowing the witness, Lackey, to state what in his opinion was the market value of this mill property June, 1902. The market price of property being a conclusion which is largely made up of presumptions, may always be proved by the opinions of witnesses based, of necessity even in fact on hearsay.— *Burks v. Hubbard,* 69 Ala. 380; *E. T. V. & G. R. R. Co. v. Watson,* 90 Ala. 44, 7 South. 813.

Reversed and remanded.

Dowdell, Simpson, and Denson, JJ., concur.