## STATE v. CALIFORNIA PACKING CORPORATION

No. 6584. Decided September 29, 1943. (141 P. 2d, 386.)

*Grover A. Giles,* Atty Gen., and *Zar E. Hayes* and *A. U. Miner,* Deputy Attys. Gen., for appellant.

*Howell, Stine & Olmstead,* of Ogden, for respondent.

LARSON, Justice.

Was the demurrer to plaintiff's amended complaint properly sustained? That is the only question presented by this appeal from the District Court of Weber County. Plaintiff commenced this action to recover for the loss of certain trout alleged to have been killed by the act of the defendant in polluting certain waters. The original complaint was in two causes of action: One founded upon the alleged violation of a specific duty, allegedly imposed upon defendant by statute; the other upon the theory

of negligent conduct on the part of defendant. The District Court sustained a demurrer upon the theory that the two causes of action were inconsistent and cancelled each other. Plaintiff filed an amended complaint, and so we shall not review the ruling of the trial court on that demurrer. By pleading over after the ruling plaintiff waived any error in the ruling on demurrer. *O'Gorman* v. *Utah Realty & Construction Co.,* 102 Utah 523, 129 P. 2d 981. Defendant demurred to the amended complaint, which demurrer was sustained by the District Court. Plaintiff stood on the amended complaint, refused to amend, and the action was dismissed. Plaintiff appeals.

The amended complaint, as far as material here, alleged that plaintiff was the owner of certain lands specifically described; that upon such lands it maintained and operated a fish hatchery and fish rearing pond, where it kept trout for spawning purposes; and then stated:

"that said ponds were fed and supplied with water from natural springs in the vicinity, supplemented by waters flowing into said ponds from a certain ditch or canal commonly known and described as Mill Race Ditch; that the waters in said rearing ponds as obtained from said springs and as supplimented by the waters from said Mill Race Ditch are, * * * of a pure and wholesome quality, free from pollution and well suited for the rearing and propagation of trout."

It is then alleged that defendant operated a cannery near the Mill Race Ditch about four miles upstream from the fish ponds, and then says:

"That in connection with and as an incident to the operation of its canning factory or plant as above described, the defendant on or about the 24th day of October, 1941, wrongfully, unlawfully, negligently, and in disregard of the rights of plaintiff permitted and allowed large amounts of sauerkraut, sauerkraut juice, saline substances, and other deleterious substances to flow and escape from its said canning factory or plant into the Mill Race Ditch."

That said substances followed the course of the Mill Race Ditch downstream and into the rearing ponds of the plain-

tiff. That as a direct and proximate result thereof large numbers of the trout spawners were killed to plaintiff's damage.

Do such allegations state a cause of action? As so often said, to state a cause of action a complaint must show: A primary right existing in the plaintiff; a primary duty with regard thereto imposed by law on the defendant; a delict by defendant in his duty with respect to plaintiff's right. Does the amended complaint show a primary right existing in plaintiff in respect to the waters of Mill Race Ditch? In the brief plaintiff strenuously contends that it is not concerned with polution of the waters of Mill Race Ditch, but relies only upon the pollution of the waters of the fish ponds. But the only acts of defendant of which it complains were acts which the complaint specifically alleges were done with respect to the waters of Mill Race Ditch, and at a point four miles from the fish ponds. This is based upon the well established rule that if one has no right to pollute a stream at any given point, he has no right to pollute a tributary of that stream above such given point, if such polluted water will mingle with and so pollute the waters of the stream at such given point. But it is not contended that defendant put any polluting substances directly into the fish ponds, or into the spring waters before they flowed into the fish ponds. This brings us directly to the question as to whether plaintiff has alleged any facts to show any rights of plaintiff in and to the waters of Mill Race Ditch; and as to whether the pleading shows any duty defendant owed to plaintiff with respect to such waters. It will be noted there is no allegation that the waters of Mill Race Ditch were public waters, or were waters of the state of Utah; no allegation that Mill Race Ditch was a natural stream or channel (the name rather suggests a private ditch); no allegation that plaintiff had any right to the waters or to use the same for fish rearing purposes; no allegation that the ditch was not the private ditch of the defendant. There is no allegation that defen-

dant did not have the right to empty its factory tailings into the ditch or to pollute the waters thereof; there is no allegation as to whether the defendants or plaintiff were the first in making the uses of the water of the ditch in the ways set forth in the pleading. We also note there is no allegation that the Mill Race Ditch naturally, and except for acts of the plaintiff emptied into or would commingle with the water of the springs. In fact, the contrary is suggested because plaintiff pleads the use of the waters of the spring,

"supplemented by waters flowing into the ponds from a certain ditch. * * *"

We do not mean that there must be allegations as to each and all of these matters, but refer to them merely to show the utter paucity of any allegation of any right of plaintiff in or in respect to the waters of Mill Race Ditch. Certainly if A has a private ditch conveying private water, for private uses, B would have no right, as of course, to use such ditch, or water for rearing fish. Any special rights B may have to so do must be pleaded in an action against A for interfering therewith. If on the other hand the Mill Race Ditch were a natural water course, if the water flowing therein were public waters, a different rule would apply. Plaintiff apparently overlooked this difference for the cases upon which it relies were cases where the pleadings showed that the waters were public waters, or cases which were brought for polluting a private water right which was expressly alleged. Most of the cases cited are cases involving rights growing out of riparian ownership, but even then, in each of them plaintiff pleaded the water was a natural stream, that either flowed through his land, or that his land abutted, thus establishing his right in the waters.

Under the doctrine of prior appropriation, the rule is less general against pollution. Under the principles settled by *Irwin* v. *Phillips,* 5 Cal. 140, 63 Am. Dec. 113, 15 Mor.

Min. Rep. 178, a lower appropriator cannot object to the fouling of water even in a natural stream, if he ■ acquired his rights after those of the upper user had become fixed. He takes his rights in the stream subject to its condition as fixed by prior appropriators. The prior appropriator is only required to let the waters flow on to lower appropriators subject to a reasonable deterioration in quality made necessary by his use thereof for the purposes for which he appropriated it. *Alder Gulch Con. Min. Co.* v. *Hayes*, 6 Mont. 31, 9 P. 581; and in *Levaroni* v. *Miller*, 34 Cal. 231, 91 Am. Dec. 692, 12 Mor. Min. Rep. 1232, it is said:

"If the plaintiff's dam across the ravine antedates the mining right of the defendants, the latter must pay it the same respect, for it is appurtenant to the plaintiff's premises."

And in *Crane* v. *Winsor*, 2 Utah 248, 11 Mor. Min. Rep. 69, it was held that a culinary right cannot be impaired by the operation of a rock crusher on the stream above the head of the ditch in which it is carried. Under the doctrine of prior appropriation, the rule seems to be that an ■ appropriator may not so far pollute the stream as to unreasonably injure lawful appropriators below. *Suffolk Gold Min. & Milling Co.* v. *San Miguel Con. Min. & Milling Co.*, 9 Colo. App. 407, 48 P. 828; *Arizona Copper Co.* v. *Gillespie*, 12 Ariz. 190, 100 P. 465, affirmed 230 U. S. 46, 33 S. Ct. 1004, 57 L. Ed. 1384; *Carson* v. *Hayes*, 39 Or. 97, 65 P. 814; annotation in 29 A. L. R. 891 to 914. In these cases the complaint contained specific allegations as to the nature, origin and extent of plaintiff's rights.

Plaintiff seeks to avoid the effect of the absence of any such allegations by contending that its case is founded upon the provisions of Sec. 30-0-29, U. C. ■ A. 1943:

"It shall be unlawful for any person owning or operating a sawmill, reduction works, smelter, refining or concentration works, or other industry, to cause or permit any sawdust, chemicals, silt, oil, tailings or other substances injurious to fish or game to accumulate near, or

to seep or flow into, waters or waterways of the state reasonably necessary or desirable for, the propagation of fish and game. * * *"

It is argued that this section applies to any waters, public or private, within the state of Utah and therefore it matters not whether plaintiff had any rights in the water, or whether they were at all times private waters of defendant in defendant's ditch. The argument is specious. The section is part of Title 30. The whole of this title deals with Fish and Game, which are under state control and management. As far as fish, or fish waters, are concerned, the provisions of the title definitely confine its provisions to public waters. The title creates a fish and game commission to effectuate the provisions relative to fish and game and their use by the public. It provides that the commission

"shall have control and supervision of the *waters, forests and lands of the state* for the collection, propagation, culture and distribution of fish and game." Sec. 30-0-6 (Italics added.)

Sec. 30-0-7 used the language "any lake, stream or waterway;" Secs. 30-0-13, 30-0-14, 30-0-27, 30-0-30, 30-0-42, and 30-0-43, are some of the sections which use the term "waters of this state" and the clear import of each section is that it means waters of the public streams of the state, or water flowing in natural channels. Then Sec. 30-0-24 and Sec. 30-0-28 specifically deal with private fish ponds; and with private waterways, and show clearly that the law only applies to waters of public streams or ponds. Such too is the burden of the decisions. West Virginia has a similar statute. The Supreme Court of Appeals of that state held that it applied to private waters only when fish from public waters had free access to the private waters. *State* v. *Southern Coal & T. Co.*, 71 W. Va. 470, 76 S. E. 970, 43 L. R. A., N. S., 401. To the same effect is *People* v. *Truckee Lumber Co.*, 116 Cal. 397, 48 P. 374, 39 L. R. A. 581, 58 Am. St. Rep. 183; *Cottrill* v. *Myrick*, 12 Me. 222; *State* v. *Franklin Falls Co.*, 49 N. H. 240, 6 Am. Rep. 513; *State* v. *Roberts*, 59 N. H. 256, 47 Am. Rep. 199; Id., 59 N. H. 484.

It is well established that a person is liable if he without right commits an act which kills fish in private ponds. *Smith* v. *Cranford*, 84 Hun 318, 32 N. Y. S. 375 affirmed 155 N. Y. 640, 49 N. E. 1104; *Seaman* v. *Lee*, 10 Hun, N. Y. 607. In *Lund* v. *Salt Lake County*, 58 Utah 546, 200 P. 510, this court held in a case much like this, that the injury must have been entirely unexpected, and due to some negligence on the part of the defendant. In the instant case plaintiff alleged that the act of defendant was "an incident in the operation of its canning factory." But we are dealing here with a question of pleading and the requisites to maintain an action therefor. If Mill Race Ditch is a private ditch, or if the waters flowing therein are private waters, and such is more inferable from amended complaint than is the contrary, what rights has plaintiff therein? As indicated supra, the complaint does not show that the waters of Mill Race Ditch in their regular course would commingle with the waters of the springs plaintiff uses at its ponds. The implication of the pleading is that the waters of the Mill Race are diverted from the ditch into the ponds to "supplement the waters from the springs." If therefore plaintiff is diverting private waters through its fish ponds for a non-consumptive use, it does so as a licensee, and at its own risk as to the uses or conditions of the water made by the private owner, and cannot complain. *Fairplay Hydraulic Min. Co.* v. *Weston*, 29 Colo. 125, 67 P. 160, 21 Mor. Min. Rep. 725; *Alabama Con. Coal & Iron Co.* v. *Turner*, 145 Ala. 639, 39 So. 603, 117 Am. St. Rep. 61; *Mississippi Mills Co.* v. *Smith*, 69 Miss. 299, 11 So. 26, 30 Am. St. Rep. 546; *Carlyn* v. *Laverny*, 1 Hurlst. & N. 784, 156 Eng. Reprint 1417, 14 Mor. Min. Rep. 397.

The amended complaint fails to show or plead any facts sustaining a necessary inference to show that plaintiff had a primary right to have the waters of Mill Race Ditch unpolluted; it also fails to show any duty owed by defendant to plaintiff with respect to the waters of Mill Race Ditch, or that defendant did anything it did not have a right to do.

Defendant's demurrer was properly sustained. Plaintiff having refused to amend, the action was properly dismissed. The judgment is affirmed.

McDONOUGH, MOFFAT, and WADE, JJ., concur.

WOLFE, Chief Justice (concurring).

I concur. I am not prepared to say that *O'Gorman* v. *Utah Realty & Construction Co.*, Utah, 129 P. 2d 981, is applicable in this case. While error in overruling a demurrer is ordinarily waived by pleading over, the rule may be different in a case where the ruling compels a choice between a pleading over and thus denying the pleader of the right to exploit a theory or standing on the first complaint and thereby running the risk that if the ruling on the demurrer is sustained by the appellate court he would be out of court entirely. I do not think the pleader is required to exercise the opportunity to try his case on a particular theory only at peril of being out of court altogether. I think in such cases pleading over does not waive the error but the ruling is presented for review.

In this case, however, an examination of the original complaint reveals that it was subject to the same infirmities as the amended complaint in those respects pointed out by the court's opinion in this case. Hence, the State would be no further advanced if reinstatement of the original complaint were permitted. A demurrer interposed would have to be sustained, not on the grounds assigned by the judge of the lower court, but for the reasons stated by Mr. Justice Larson in the above opinion.