Taft, J.
The ultimate question to be determined on this appeal, as indicated by defendants’ assignments of error and stated in plaintiff’s brief, is whether the Common Pleas Court was correct in its judgment “holding that licenses are not required to fish on Lake Evans.” Standing alone, the judgment entry of that court might be susceptible of an interpretation that that court had enjoined defendants from enforcing on Lake Evans other laws or lawful regulations regulating fishing. However, that judgment was apparently sought by plaintiff, as the *36 record indicates, and, when read in the light of the conclusions of law, was intended, as plaintiff’s brief recognizes, only to enjoin “defendants from attempting to require Ohio fishing licenses of persons fishing on Lake Evans. ’ ’
We are therefore concerned only with the question as to the necessity of an Ohio fishing license to fish on Lake Evans.
Whether such a license is necessary depends upon Section 1533.32, Revised Code, providing for fishing licenses.
Defendants recognize that Lake Evans may be the subject of private ownership and that plaintiff, as its owner, may have the exclusive right to take fish from its waters. Lembeck v. Nye (1890), 47 Ohio St., 336, 24 N. E., 686, 8 L. R. A., 578, 21 Am. St. Rep., 828. Paragraph 1 (a) of the syllabus of that case, which involved Chippewa Lake in Medina County, reads:
“A nonnavigable inland lake is the subject of private ownership ; and where it is so owned, neither the public, nor an owner of adjacent lands, whose title extends only to the margin thereof, have a right to boat upon, or take fish from, its waters.”
However, defendants contend that those whom plaintiff authorizes to take fish from Lake Evans must, by reason of Section 1533.32, Revised Code, have a fishing license to do so.
Under the words of that statute, a license is required only for fishing “in any of the waters of the state.” By Section 1531.01 (FF), Revised Code, “waters” are defined so as to include the waters of Lake Evans, i. e., as ‘ ‘ any lake, pond, reservoir, stream, channel, lagoon, or other body of water, or any part thereof, whether natural or artificial.” However, “waters of the state, ’ ’ as used in Section 1533.32, Revised Code, are not defined by our statutes.
Those words could reasonably be interpreted as describing all waters in the state. Cf. People v. Horling (1904), 137 Mich., 406, 100 N. W., 691, People v. Conrad (1900), 125 Mich., 1, 83 N. W., 1012, People v. Bridges (1892), 142 Ill., 30, 31 N. E., 115, 16 L. R. A., 684, Ex parte Fritz (1905), 86 Miss., 210, 38 So., 722, 109 Am. St. Rep., 700, Peters v. State (1896), 96 Tenn., 682, 36 S. W., 399, and State v. Lipinske (1933), 212 Wis., 421, 249 N. W., 289, where the statutory words modifying waters were either “in” or “within” instead of “of.” On the other hand, they could just as reasonably be interpreted as describing only public waters as distinguished from private waters, thus inter *37 preting the word “of” as indicating some sort of ownership relationship. See State v. California Packing Corp. (1943), 105 Utah, 182, 141 P. (2d), 386, Davis v. State (1882), 38 Ohio St., 505 (“Taking the language in its ordinary meaning, the word ‘of’ in this connection is equivalent to ‘the property of’ or ‘belonging to’ ”). But cf. State v. Lowder (1926), 198 Ind., 234, 153 N. E., 399, Washburn v. State (1950), 90 Okla. Crim., 306, 213 P. (2d), 870, 15 A. L. R. (2d), 751, Reid v. Ross, Commr. (Mo., 1932), 46 S. W. (2d), 567, and Dargan v. Richardson, Game Warden (1956), 229 S. C., 135, 92 S. E. (2d), 167, where other language of the statutes involved indicated that the legislative body intended to describe all waters in the state, and Holland v. Flora (Ky., 1955), 284 S. W. (2d), 824, where the statute involved indicated an intent to describe even private ponds.
An important factor, in determining which of these interpretations should be adopted, is that Section 1533.32, Revised Code, is a criminal statute for the violation of which a penalty is provided in Section 1533.99 (J). It is well settled that penal statutes should be strictly construed. State v. Fremont Lodge, Loyal Order of Moose (1949), 151 Ohio St., 19, 84 N. E. (2d), 498. Thus in Caldwell v. State (1926), 115 Ohio St., 458, 154 N. E., 792, it is said in the opinion at page 461: ‘ ‘ * * * in statutes where the state is involved, on the one part, and the citizen, on the other, by analogy to the same rule of interpretation governing contracts, the Legislature having chosen the language, that language will not be extended by implication beyond its clear import. Thus it is that in a penal statute, or a statute levying a tax, a rule of strictness will be followed as against ' the sovereign and a rule of favor as toward the citizen.”
Such a construction of the words “waters of the state” in Section 1533.32, Revised Code, will require the conclusion that those words mean public waters as distinguished from private waters.
Furthermore, if the General Assembly meant all waters in the state, it could have used only “waters” and not “waters of the state” since “waters” had already been defined to mean all waters in the state. See Section 1531.01 (FF), Revised Code. Thus, the words “of the state” can reasonably supply no additional meaning, without being redundant, except in limiting *38 “waters” so as to indicate some kind of ownership relationship between the state and the waters in question. In construing a statute, an effort should be made to give some meaning to all words used by the legislative body. 50 American Jurisprudence, 364, Section 359.
Our conclusion, that “waters of the state” should be interpreted to mean public waters as distinguished from private waters, is also fortified by comparing Section 1533.32, Revised Code, with Section 1533.10, Revised Code, providing that “no person shall hunt or trap any wild bird, or wild quadruped without a hunting and trapping license.” In the latter statute, there is no limitation as to the location, comparable to the limitation expressed by the words “in the waters of the state” specified in Section 1533.32, Revised Code, relating to fishing licenses. In other words, hunting without a license is forbidden whether such hunting is on public or on private lands, but fishing without a license is forbidden only where such fishing is in waters of the state.
The question remains as to what the words “waters of the state” do include.
They obviously include waters on lands owned by the state or waters otherwise owned by the state. It is not claimed that the waters of Lake Evans represent such waters.
The words “waters of the state” also include “navigable waters,” as that term is used legally to delineate waters in which the public has a right of navigation. However, not all waters having a capacity for boating are considered as being legally “navigable” so as to be “public.” See Mentor Harbor Yachting Club v. Mentor Lagoons, Inc. (1959), 170 Ohio St., 193, 163 N. E. (2d), 373, where the first paragraph of the syllabus states that “the division of watercourses into navigable and nonnavigable is merely a method of dividing them into public and private.” See also Lembeck v. Nye, supra (47 Ohio St., 336). Thus, it is not even contended that the waters of Lake Evans, although having ample capacity for boating, are legally “navigable,” probably because there is not only no public terminus which can be reached by boating on or from those waters but also because they are not even reachable by boating from admittedly navigable waters such as Lake Erie, as were the waters held navigable in Coleman v. Schaeffer (1955), 163 Ohio *39 St., 202, 126 N. E. (2d), 444, and Yachting Club v. Mentor Lagoons, supra (170 Ohio St., 193).
Defendants further contend that the evidence in the record requires the conclusion as a matter of law that fish may pass back and forth between the waters of Lake Evans and the waters of Yellow Creek Ditch, and that the waters of that ditch are public waters (see Section 6131.59, Revised Code, and Taylor, Aucl., v. Crawford [1905], 72 Ohio St., 560, 74 N. E., 1065, 69 L. R. A., 805) as well as waters located on the lands of others than plaintiff.
For the purposes of this opinion and without expressing our agreement or disagreement with those contentions, we will assume that those contentions are sound. Notwithstanding that assumption, we are inevitably led to the conclusion that the waters of Lake Evans do not represent “waters of the state” within the meaning of Section 1533.32, Revised Code.
Thus, our decisions have consistently recognized and held that the exclusive right to fish even as against the public is vested in the owner of the land underlying waters which are not legally navigable, except where such waters are a portion of a body of water that is legally navigable. Lembeck v. Nye, supra (47 Ohio St., 336), paragraph 1 (a) of the syllabus quoted supra. This conclusion has been reached even in cases where it is apparent that fish could swim to and from admittedly public waters. East Bay Sporting Club v. Miller (1928), 118 Ohio St., 360, 161 N. E., 12 (paragraphs one and four of syllabus). Although the portions of the latter decision and its syllabus, relating to the question as to what are navigable waters, were modified in Coleman v. Schaeffer, supra (163 Ohio St., 202), and Yachting Club v. Mentor Lagoons, supra (170 Ohio St., 193), the portions thereof relating to the question, as to what, if any, rights the public has in nonnavigable watérs located on privately owned lands, was not disturbed.
It would be no more reasonable to say that waters of a private lake or pond become “waters of the state” because fish may and do swim back and forth between such waters and admittedly public waters or waters of another owner than it would be to say that privately owned lands become public lands because wild animals go freely from admittedly public lands or lands of another to such privately owned lands and back again.
*40 To say that waters of a private lake or pond become “waters of the state” because there may be publicly owned fish in such waters is to confuse the question of ownership of the fish with the question of whether the waters in which such fish are located are public waters. But see Milton v. State (1920), 144 Ark., 1, 221 S. W., 461. The real question in the instant case is not whether the state owns the fish in plaintiff’s lake but whether the waters of that lake are public waters, i. e., “waters of the state” within the meaning of Section 1533.32, Revised Code. Obviously, publicly owned fish may swim in private waters just as publicly owned wild animals may run on private lands. Neither that statute nor any other purports to require a license merely for taking or catching fish or even for taking or catching state owned fish (i. e., to use the words of Section 1531.02, Revised Code, fish “not legally confined or held by private ownership legally acquired”). Section 1533.32 only requires a license for taking or catching fish “in * * * waters of the state.”
It may reasonably be contended, although we see no need in the instant case for expressing an opinion thereon, that the state could require a license from someone for fishing in a privately owned pond or lake, at least where such pond or lake is connected with navigable or other public waters or even with waters owned by others, so that it is apparent that the fish in such pond or lake are not, to use the words of Section 1531.02, Revised Code, “confined” and so are owned by the state. See Arkansas Game and Fish Commission v. Storthz (1930), 181 Ark., 1089, 29 S. W. (2d), 294, State v. Roberts (1879), 59 N. H., 256, 484 (where the provisions of the statute involved do not appear and the question considered was whether the state could control fishing in a private pond between which pond and public waters fish could swim), and People v. Truckee Lumber Co. (1897), 116 Cal., 397, 48 P., 374, 58 Am. St. Rep., 183, 39 L. R. A., 581. However, the General Assembly has not enacted a statute requiring such a license.
It is our conclusion that the words, “waters of the state” as set forth in Section 1533.32, Revised Code, do not include a privately owned nonnavigable lake even where such lake is so connected with public waters or waters owned by others that fish may swim back and forth between such lake and such public waters or waters owned by others.
*41 Defendants finally contend in effect that, under such a conclusion, the provisions of the statute, permitting owners and tenants and members of their immediate families to fish without a license, would add nothing to the meaning of the statute. However, navigable waters, which would clearly be public waters, may flow or stand over, through, upon or along privately owned land even where such land is not in and does not border on a state owned park or state owned lake. Hence, it is apparent that there is no merit to this contention.

Judgment affirmed.

Zimmerman, acting C. J., Younger and Matthias, JJ., concur.
Bell and O’Neill, JJ., dissent.
Herbert, J., not participating.
Zimmerman, J., sitting in the place and stead of Weygandt, C. J.
Younger, J., of the Third Appellate District, sitting by designation in the place and stead of Zimmerman, J.